570 So.2d 994 (1990)
Thomas LAYDEN, Appellant,
v.
CORRECTIONS CORPORATION OF AMERICA, a Delaware Corporation Doing Business in the State of Florida, Appellee.
No. 89-3180.
District Court of Appeal of Florida, First District.
September 5, 1990.
Peter M. Siegel and Randall C. Berg, Jr., of Florida Justice Institute, Inc., Miami, for appellant.
Scott W. Clemons of Bryant, Higby & Williams, Panama City, for appellee.
ZEHMER, Judge.
Thomas Layden appeals a final order directing a verdict for Corrections Corporation of America (CCA) after a jury found that CCA negligently caused Layden to remain in jail for several months longer than necessary while awaiting trial. Because the trial court erred in disregarding the jury's determination of this issue of fact and directing a verdict for CCA, we reverse.
Layden was arrested on December 3, 1986, and placed in the Bay County Jail, which was operated by CCA. Eugene Widner occupied the cell adjacent to Layden. As early as December 8, Widner began exhibiting symptoms of hepatitis.[1] Widner received no medical attention, however, and remained in the cell adjacent to Layden until December 21 when his sister intervened and insisted that he be given a blood test. Widner tested positive for hepatitis-B, and was placed in medical isolation. All the other occupants of Widner's cell pod were then tested, and Layden tested positive. On January 5, 1987, Layden was quarantined in a medical isolation cell.
At Layden's initial meeting with his public defender, Diane Cleavinger, sometime in mid to late December (prior to being tested for hepatitis and being placed in quarantine), Layden requested a speedy trial. Cleavinger testified that the case had been fully investigated at that time, and that she intended to move for a speedy trial. She stated that a speedy trial would have been warranted because she did not think the alleged victim was going to appear to testify against Layden, and because she believed the acts on which the charge against Layden was based simply did not constitute a crime.
*995 In early January 1987, Cleavinger attempted to visit Layden in jail, but was informed by the CCA staff that Layden had tested positive for infectious hepatitis and was in quarantine. At Layden's pretrial and bond reduction hearing the following day, Cleavinger passed this information along to the trial judge. The judge barred Layden from the courtroom and canceled the hearing. Cleavinger attempted to see Layden at least three more times between January and March, but each time was told that he was still in quarantine.
Dr. Epstein, the jail physician, testified that Layden never showed any sign of active hepatitis. He stated that Layden simply tested positive for the antigen, and that he could have acquired the antigen several years prior to his exposure to Widner. Layden bitterly complained to CCA officials including the chief nurse of his inability to see his lawyer and have his "day in court." As a result of these complaints, the chief nurse asked Dr. Epstein to write a letter to the effect that anyone in isolation for hepatitis should not be kept out of court. On January 29 Dr. Epstein responded by writing a letter emphasizing that hepatitis is communicated by contact with blood or bodily secretions of the infected person. CCA did not send a copy of this letter to Layden's attorney, nor did it ever inform her that Layden did not have infectious hepatitis.
Ms. Cleavinger testified that her plan to demand a speedy trial for Layden "got put on hold" because of the information received from CCA that Layden had infectious hepatitis. She stated that if she had demanded a speedy trial, it probably would have taken place in February. The trial was not scheduled until May, however, and was then postponed because the alleged victim failed to appear. In June, when the witness again failed to appear, the court dismissed the charges against Layden.
Layden filed suit against CCA alleging that because of its negligence, he remained in jail for several extra months. The case was tried to a jury who found that CCA was 25% negligent, and that its negligence was a legal cause of damage to Layden. After the trial, CCA renewed its motion for directed verdict arguing that there was no evidence from which a reasonable jury could conclude that CCA's actions or conduct caused or contributed to causing any delay in the disposition of the criminal charges against Layden. The court granted the motion, finding that the negligence, if any, of CCA in diagnosing and quarantining Layden for hepatitis was not the proximate cause of the delay in his being brought to trial, if there was in fact such a delay.
Layden argues on appeal that sufficient evidence was presented to permit the jury to conclude that CCA's negligent conduct caused his trial to be delayed several months. In response, CCA assumes, arguendo, that it negligently allowed Layden to become exposed to hepatitis and placed in quarantine, but argues that the failure of Layden's attorney to move for a speedy trial was an independent, intervening cause of the delay that broke the causal relationship between CCA's acts and Layden's damages. CCA recognizes that "one who is negligent is not absolved of liability when his conduct `sets in motion' a chain of events resulting in injury to the plaintiff." Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520, 522 (Fla. 1980) (citations omitted). It contends, however, that the conduct of Layden's attorney was not foreseeable, thus the trial court correctly relieved it of liability.
Ordinarily the question of whether an intervening cause was foreseeable is for the trier of fact. Our Lady of Divine Providence v. Sweetwater, 482 So.2d 440 (Fla. 3d DCA 1986). Only when reasonable persons could not differ as to whether an intervening cause was foreseeable may the court determine the issue as a matter of law. 482 So.2d at 442. Here, reasonable persons could differ in their determination as to whether Ms. Cleavinger's failure to invoke the speedy trial rule was foreseeable. Evidence was presented that CCA knew Layden's quarantine status was preventing him from communicating with his attorney and appearing in court, and knew Layden did not have infectious hepatitis, *996 yet it continued to hold him in quarantine while doing nothing to correct the misinformation it had previously communicated to Ms. Cleavinger. Cleavinger testified that but for CCA's placement of Layden in quarantine, she would have invoked the speedy trial rule. The credibility of that testimony, and the weight to be given it in determining whether and to what extent CCA was a legal cause of damage to Layden, were issues for the jury.
Because the court erred in directing a verdict for CCA, we reverse and remand with directions to enter a judgment in accordance with the verdict of the jury.
REVERSED AND REMANDED.
MINER and ALLEN, JJ., concur.
NOTES
[1] Widner testified that he had pain while urinating, headaches, his stool was turning white, and he was suffering from fevers, chills, and loss of appetite. (T. 128). Widner stated that "everybody" saw that he was turning yellow, including a correctional officer who commented that he looked like he had hepatitis. (T. 131-132).