604 So.2d 1241 (1992)
Deborah Anne LOOMIS and Sandra J. Loomis, Appellants,
v.
James D. HOWELL, an Individual; One Seagrove Place Owner's Association, Inc., a Corporation, Appellees.
No. 91-1800.
District Court of Appeal of Florida, First District.
August 28, 1992.
James Harvey Tipler, Fort Walton Beach, for appellants.
Marcia Davis of Barron, Redding, Hughes, Fite, Bassett & Fensom, P.A., Panama City, for appellees.
WOLF, Judge.
Deborah Anne Loomis and Sandra J. Loomis appeal from a partial final summary judgment entered in favor of two defendants, James D. Howell and One Seagrove Place Owner's Association, Inc. We find that genuine issues of material fact exist which preclude entry of a summary judgment, and we reverse.
The appellants, who were the plaintiffs in the trial court, filed a negligence action as a result of an automobile collision which occurred on October 1, 1986. Deborah Anne Loomis was the driver of a vehicle in which Sandra J. Loomis was a passenger when the Loomis vehicle collided with another vehicle. The second vehicle was being driven by Simmons, and was occupied *1242 by others who were fleeing from a condominium known as One Seagrove Place. The fleeing parties were alleged to have committed criminal mischief at the condominium. The cause of action against appellees was based upon Howell's attempt to apprehend the suspected vandals. Affidavits and depositions presented in conjunction with the motion for summary judgment, reveal the following facts which are essentially undisputed: Believing that One Seagrove Place was being vandalized by persons later identified as Simmons, Somerset, and Dainard, Ms. Brewer, an employee of One Seagrove Place, called the appellee, James Howell, a member of the board of the homeowners' association, for his assistance in attempting to apprehend the individuals; Howell met the suspected vandals in the elevator and held them at gunpoint with a cocked revolver; after they reached the ground floor, Howell's attention was distracted and the three men broke and ran.
The separate versions of what occurred next are materially different. According to Simmons, he ran out of the building and headed for his car which was in the parking lot of One Seagrove Place. As he ran, he heard a gunshot fired behind him. When Simmons reached his car, Terri Brewer's husband was standing near it, Simmons pushed him out of the way and jumped into his car. At that point, Howell ran up to the driver's side of Simmons' car, and stopped approximately six feet away. Howell yelled to Simmons to stop or he would "blow [his] damn head off." Before Simmons could even turn off the ignition of his vehicle, Howell fired his revolver into the side of Simmons' vehicle. Simmons immediately put the vehicle into gear and began to leave the parking lot at a high rate of speed. Simmons saw and heard Howell fire at least two more shots in his direction. As Simmons entered the highway, he was looking into his rear view mirror at Howell, who continued to fire his weapon.
According to Howell, the following occurred when the elevator doors opened. The three vandals bolted and ran in different directions. Howell pursued the two who ran through the south door, while the Brewers followed the other, who was later identified as Simmons. Simmons ran through the parking lot towards his car. Dan Brewer lunged at the car door handle to stave off Simmons' escape, but to no avail. Simmons started the car and recklessly backed out of the parking space, nearly striking Terri Brewer. Simmons then threw the car into gear and sped out of the parking lot, engine revving and tires squealing.
Howell also stated that as Simmons made his getaway towards the access road leading to Highway 30-A, Howell arrived in the parking lot. Realizing that Simmons was ignoring Brewer's repeated orders to stop, Howell knelt and fired a shot in the direction of the rear of the car. The shot had no effect on bringing the car to a stop. Simmons continued his escape by careening down the access road. Upon reaching the intersection of the access road and Highway 30-A, Simmons did not stop, but instead proceeded into the intersection driving on the wrong side of the road toward the Loomises' vehicle which was headed westbound on Highway 30-A. The cars then collided. Howell stated that the collision occurred due to Simmons' reckless failure to stop or brake and due to his negligence by driving on the wrong side of the road.
Based upon these events, the appellants sought damages against the appellees. In their original and amended complaints, appellants alleged that the appellee Howell's conduct in attempting to apprehend Simmons and the others was unwarranted and was, in fact, negligent and wanton. Appellants further alleged that Howell's negligent and wanton conduct in repeatedly firing the revolver at Simmons' vehicle caused him to flee at a high rate of speed and to thereby drive into the path of, and to collide with, the vehicle occupied by the appellants. Appellants also alleged that One Seagrove Place was vicariously liable for the acts of its agent, Howell.
In their motion for summary judgment, Howell and One Seagrove Place argued that (a) Howell's conduct on the occasion in *1243 question was reasonable; and (b) the consequences of Howell's conduct were not foreseeable and, therefore, not the proximate cause of appellants' injuries. In addition, at the hearing on the motion for summary judgment, Howell and One Seagrove Place argued that Simmons, Somerset, and Dainard's acts of criminal trespass, and Simmons' fleeing, were legally sufficient intervening causes of appellants' injuries which would insulate Howell and One Seagrove Place from liability.
On October 25, 1989, the trial court, without opinion, granted the motion for summary judgment of Howell and One Seagrove Place.
In U-Haul Co. of East Bay v. Meyer, 586 So.2d 1327 (Fla. 1st DCA 1991), this court stated the general principles concerning the granting of summary judgments in negligence actions:
`[A] party moving for summary judgment must show conclusively the absence of any genuine issue of material fact and the court must draw every possible inference in favor of the party against whom a summary judgment is sought.' Moore v. Morris, 475 So.2d 666, 668 (Fla. 1985). Further caution should be exercised with respect to a grant of summary judgment in negligence actions. Id. See also Unijax, Inc. v. Factory Insurance Assoc., 328 So.2d 448, 449 (Fla. 1st DCA 1976), cert. denied, 341 So.2d 1086 (Fla. 1976).
586 So.2d at 1330.
In this case, there are genuine issues of material fact as to whether the appellant's use of a loaded firearm was reasonable and justified under the circumstances. In Nelson By & Through Bowens v. Howell, 455 So.2d 608 (Fla. 2d DCA 1984), the issue was whether a private citizen was justified in using deadly force to prevent escape from his custody of a fleeing felon. The court there held that the question of whether the citizen reasonably believed that deadly force was necessary under the circumstances was a question for the jury. In the instant case, there is also a factual dispute concerning what Mr. Howell actually did in attempting to apprehend the individuals in the instant case. It is the function of a jury to resolve such disputes, where the accounts of events given by the various parties differ.
Appellees also argue that the criminal conduct of the suspected vandals was an intervening cause of the appellants' injuries, thereby insulating the appellees from liability. In order for an intervening cause to relieve a negligent party from liability, it must be independent of the original negligence, and it must not be set in motion by the original negligence. Tallahassee Furniture Co., Inc. v. Harrison, 583 So.2d 744 (Fla. 1st DCA 1991), rev. denied, 595 So.2d 558 (Fla. 1992). An intervening cause absolves the original tort-feasor of liability only when it is fully independent and unforeseeable. Truck and Trailer Sales Corp. v. Carolina Freight Carriers Corp., 500 So.2d 177 (Fla. 1st DCA 1986); Waters v. ITT Rayonier, Inc., 493 So.2d 67 (Fla. 1st DCA 1986). In order to hold an original tort-feasor liable for the actions of an intervening third party, it is not necessary that the original tort-feasor foresee the precise injury or the precise manner in which an injury occurs; it is enough that the resulting injury is within the scope of risk created by the original tort-feasor. See Coral Gables Fed. Savings & Loan Ass'n v. City of Opa-locka, 516 So.2d 989 (Fla. 3d DCA 1987), rev. denied, 528 So.2d 1181 (Fla. 1988).
In City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla. 1992), the supreme court addressed the liability of police for the manner in which they sought to apprehend a fleeing felon. In that case, the court held that the actions of the police in chasing the felon created a foreseeable risk to other parties on the street. The court stated, "In other words, some substantial portion of this risk is being created by the police themselves, notwithstanding any contributory negligence of the person being chased." Id. at 1225. Here, Howell's firing shots at the fleeing car may be viewed as setting in motion the reckless behavior of Simmons; but reasonable people could differ as to whether Howell's conduct was a substantial factor in producing the resulting injuries and as to whether *1244 such a result was foreseeable. The question of whether an intervening cause was foreseeable is for the trier of fact. See, e.g., Layden v. Corrections Corp. of America, 570 So.2d 994 (Fla. 1st DCA 1990); Truck and Trailer Sales, supra.
The appellees argue that the consequences of Howell's conduct were not foreseeable, and his conduct was, therefore, not the proximate cause of appellants' injuries. In City of Pinellas Park, supra, the supreme court addressed the issue of foreseeability in the context of apprehension of a fleeing felon:
In McCain [v. Florida Power Corp., 593 So.2d 500 (Fla. 1992)], we recently stated:
[H]arm is "proximate" in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question... .
[I]t is immaterial that the defendant could not foresee the precise manner in which the injury occurred or its exact extent. In such instances, the true extent of liability would remain questions for the jury to decide.

McCain, 593 So.2d at 503 (citations omitted). A jury question does not exist, on the other hand, where
"after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that [the conduct] should have brought about the harm."

Id. at 504 (quoting Restatement (Second) of Torts § 435(2) (1965)). Where reasonable persons may differ on this question, however, proximate causation remains an issue for the jury to resolve. Id.

Based on McCain, we believe it clear that a jury question exists in the present case as to proximate causation. Human experience and prudent foresight strongly suggest that serious bodily injury is likely to result when a stream of between fourteen and twenty vehicles are moving down an urban thoroughfare, in disregard of traffic lights, at speeds of up to 120 miles per hour. This conclusion is not undermined by the fact that Deady's vehicle, not one of the police cars, actually was engaged in the collision that killed the Browns. Experience and foresight support the conclusion that Deady engaged in such reckless conduct primarily because he was being chased by police, and that this misconduct would have ceased had the police discontinued the pursuit. There is nothing extraordinary in this conclusion. Accordingly, the issue may not be taken from the finder of fact.
For the foregoing reasons, the opinion under review is approved, and this cause is remanded to the trial court for further proceedings consistent with this opinion.
City of Pinellas Park, supra at 1228.
As in City of Pinellas Park, we believe that experience and foresight suggest that serious bodily injury is likely to result when a car is utilized to flee from a scene of the crime. It is also likely that a person being chased by a party firing a gun will drive in a reckless manner in order to flee the scene. The reckless behavior here may not have occurred if the pursuit had not taken place in the manner which it did. Such issues are to be resolved by the trier of fact.
We, therefore, reverse the partial summary judgment.
ZEHMER and KAHN, JJ., concur.