689 So.2d 1152 (1997)
Debra L. PORTER, individually, and as guardian of Nansi M. Kelly, and John D. Porter as husband of Debra L. Porter; Tami L. Richter; Mary J. Starkie; Karen A. Brown as guardian of Jennifer Baisden; Kathryn M. Bishop; and Stephanie Jo Wheeler, Appellants,
v.
The STATE of Florida, DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Appellee.
Debra L. PORTER, individually, and as guardian of Nansi M. Kelly, and John D. Porter as husband of Debra L. Porter; Tami L. Richter; Mary J. Starkie; Karen A. Brown as guardian of Jennifer Baisden; Kathryn M. Bishop; and Stephanie Jo Wheeler, Appellants,
v.
The TOWN OF CROSS CITY, Appellee.
Nos. 95-4664, 96-1132.
District Court of Appeal of Florida, First District.
March 5, 1997.
*1153 David H. Burns and William D. Anderson of Cox & Burns, Tallahassee, for Appellants.
Lisa M. Appelo and Robert L. Hessman of Rumberger, Kirk & Caldwell, P.A., Tallahassee, for appellee State of Florida, Department of Agriculture and Consumer Services.
J. Bruce Bowman and John A. Grant of Dennis & Bowman, P.A., Tallahassee, for Appellee Town of Cross City, for Appellees.
PADOVANO, Judge.
In these consolidated appeals, the plaintiffs in a personal injury action seek review of final summary judgments in favor of two defendants, the Department of Agriculture and Consumer Services and the Town of Cross City. Based on the material facts, which are not in dispute, we conclude the law enforcement officers employed by these defendants did not have a foreseeable legal duty to the plaintiffs. Therefore, we affirm the final summary judgments for the Department and the Town of Cross City.
The suit arose from multiple collisions between three private vehicles, two law enforcement vehicles, and a stolen van driven by two youthful offenders who had escaped from custody. The events preceding the collision began at the Henry and Rilla White Youth Foundation in Chiefland where the two youths were residing. Employees of the foundation discovered that both the youths and the van were missing and they notified the Levy County Sheriff's Department. An agent of the Levy County Sheriff's Department then called law enforcement officers at the Department's agricultural inspection station in Fanning Springs and asked them to be on the lookout for the van.
Shortly after receiving this information, Department officer Ronnie Edmonds spotted the van north of Chiefland on U.S. Highway 19. Officer Edmonds flashed the blue lights of his patrol car and signaled the van to stop. *1154 When the youths saw the signal, however, they increased the speed of the van and continued northbound. Officer Edmonds then contacted the inspection station by radio and informed officer Thomas Berrell that he was beginning a pursuit of the stolen van. The officers did not comply with the Department's policy, which provides that a supervisor must determine the need for continued pursuit of a vehicle. Officer Berrell attempted without success to contact his immediate supervisor and he did not notify any other officer in a supervisory position.
Approximately one mile south of Cross City, Officer Edmonds was joined in his pursuit of the van by Officer Robert Lee of the Cross City Police Department. As the youths passed through Cross City, they were driving the van at speeds greater than eighty miles per hour. Edmonds and Lee continued their pursuit northbound on U.S. Highway 19 and, as the van approached the Taylor County line, the officers contacted the Taylor County Sheriff's Department by radio. Just south of Salem, in Taylor County, several Taylor County Deputies took over the pursuit of the van. Edmonds and Lee then returned to their respective duty stations.
The Taylor County deputies continued their pursuit of the van into the city of Perry. The youths were driving erratically at speeds greater than one hundred miles per hour and, as they proceeded through Perry, they forced at least five private vehicles off the road. Once the van reached the Perry city limits, Taylor County Sheriff's deputies attempted a maneuver described as a "rolling roadblock." Two officers ahead of the van drove abreast of each other at speeds slower than the speed limit to slow the van while other officers approached from the rear.
The plaintiff, Debra Porter, was traveling south on Highway 19 and she was in the turn lane waiting to make a left turn onto Highway 98. Nansi Kelly, Jennifer Baisden, Mary J. Starkie and Tami L. Richter were riding with Porter as passengers. Kathryn M. Bishop, another plaintiff, was in the turn lane just behind Porter's automobile. Stephanie Jo Wheeler, the final plaintiff, was driving north on Highway 19 approaching the intersection at Highway 98. As the youths approached the intersection in the stolen van, they encountered the rolling roadblock. When the van proceeded into the intersection, it struck Wheeler's vehicle and then crashed through the middle of the two law enforcement vehicles in the roadblock. These impacts caused the van to careen out of control, resulting in violent collisions with the vehicles driven by Bishop and Porter.
Based on these facts, the plaintiffs filed a complaint for damages against the Foundation, the Department, and the Town of Cross City, alleging negligence by each defendant. The Department moved for summary judgment contending the plaintiffs' injuries were not caused by the actions of its officers and that the Department was protected, in any event, by sovereign immunity. The trial court entered a summary judgment for the Department on the ground that the injuries were not proximately caused by its officers, and the plaintiffs initiated this appeal. Cross City made an identical motion for summary judgment and, although the plaintiffs did not agree with the trial court's ruling as to the Department, they stipulated that the ruling should also apply to the defendant Cross City. The trial court entered a summary judgment for Cross City, and the plaintiffs appealed that judgment as well. The two appeals were then consolidated for review here.
All parties agree that the actions of officers Edmonds and Lee were not the actual cause of the injuries to the plaintiffs. These officers had withdrawn from the chase approximately thirty-five miles south of the point at which the van collided with the plaintiff's vehicles. Nevertheless, the plaintiffs argue that these officers set in motion the chain of events that ultimately resulted in the collision. Specifically, the plaintiffs argue that injury to innocent third parties is a foreseeable consequence of a high speed chase and that, because foreseeability is an issue of fact, they should have been allowed to present their case to a jury.
Although the plaintiffs' argument focuses on potential factual issues relating to causation, the foreseeability of the injury also bears an important relationship to the existence of a duty of care. Foreseeability relates *1155 to the duty and causation elements of negligence in different ways. McCain v. Florida Power Corp., 593 So.2d 500 (Fla. 1992). A duty exists if the defendant's conduct creates a foreseeable "zone of risk" that poses a general threat of harm to others. Kaisner v. Kolb, 543 So.2d 732 (Fla.1989). This aspect of negligence is an issue of law for resolution by the court. In contrast, the issue of proximate cause turns on the question whether it was foreseeable that the defendant's conduct would cause the specific injury that actually occurred. As the court explained in McCain, the existence of a duty is a threshold legal requirement for opening the courthouse door to a suit against the defendant, and causation is a factual requirement that must be proved to win the case. Both involve elements of foreseeability.
We must determine in light of these principles whether the trial court erred in its conclusion that Cross City and the Department cannot be liable as a matter of law for the injuries sustained by the plaintiffs. The answer depends in part on our interpretation of City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992), the most recent case in which the supreme court has addressed the civil liability of a law enforcement agency for injuries caused in a high speed chase. The officers in Brown began their pursuit of a motorist in an attempt to detain him for running a stoplight. The resulting chase involved at least a dozen police vehicles traveling at speeds approaching one hundred and twenty miles per hour along a twenty-five-mile course of a crowded highway and ended when the suspect's automobile collided with another automobile, killing three people. Although the officers had been instructed to discontinue their pursuit of the suspect, they either did not receive the order or did not obey it. The supreme court held that the manner in which the chase was conducted created a substantial risk and therefore held that the police agencies could be liable for the wrongful death of the victims.
Cross City and the Department contend that the holding in Brown supports their position in the present case because it applies only to an officer who was actively engaged in the pursuit of a suspect when the injury occurred. They rely on a footnote in the Brown opinion in which the supreme court said "[w]e find that police in the present case would have incurred no liability had they honored their departmental policies and discontinued pursuit of [the suspect], even if [he] later injured someone with his automobile or otherwise." Id. at 1227 note 8. In response, the plaintiffs contend that the supreme court was referring to a circumstance in which all police agencies have withdrawn before the injury caused by the party who was the subject of the chase. We find nothing in the footnote, however, or in the case cited there, Everton v. Willard, 468 So.2d 936 (Fla.1985), to suggest that if multiple police agencies are involved in a negligent activity, they must all withdraw before any one of them can be absolved of civil liability.
The liability of a law enforcement agency for injury caused during a high speed chase depends on the manner in which the chase is conducted. As the court held in City of Miami v. Horne, 198 So.2d 10 (Fla. 1967), an action cannot be maintained against a police agency for injuries sustained in a high speed chase on the ground that the chase is negligence per se. This point was restated in Brown, and it is now settled that the decision to conduct a chase is not alone a basis to impose civil liability against a police agency. Such an action can only be based on negligence of the officers in the manner of carrying out the chase.
Applying these principles to the present case, we conclude that Officers Edmonds and Lee had no foreseeable legal duty to the plaintiffs. Because the act of engaging in a high speed chase is not in itself a basis to impose civil liability, it cannot be said that the actions of these officers set in motion the chain of events resulting in the injury. The plaintiffs were not within the "zone of risk" created by the conduct of the officers merely because the officers initiated the chase. McCain. That much the officers were entitled to do without assuming a risk of liability. For the reasons expressed in Brown and Horne, we conclude that the plaintiffs' injuries were not foreseeable in a legal sense. Any liability on the part of Officers Edmonds and Lee would necessarily depend on proof *1156 they conducted the chase in a negligent manner. Yet it is undisputed that these officers were not conducting the chase at all when the plaintiffs were injured. Consequently, they cannot be liable to the plaintiffs.
We hold that the trial court was correct in granting summary judgment for Cross City and the Department because, as a matter of law, the officers employed by these defendants did not have a legal duty of care to the plaintiffs. This disposition makes it unnecessary for us to decide whether the Department and Cross City are protected by sovereign immunity.
Affirmed.
BOOTH, J., concurs.
WOLF, J., concurring in part and dissenting in part with opinion.
WOLF, Judge, concurring in part and dissenting in part.
I concur with the majority's affirmance as to the summary judgment in favor of Cross City. There is no evidence that the Cross City officer initiated the chase, exacerbated the situation, or did anything more than follow the lead of the officer from the Department of Agricultural and Consumer Services (department). A finding of no liability as to Cross City is consistent with the position of the majority of justices in City of Pinellas Park v. Brown, 604 So.2d 1222 (Fla.1992):
However, it may well be that the cities of Pinellas Park and Kenneth City should ultimately be dismissed from the suit upon motion for summary judgment or motion for directed verdict if the evidence develops that their police departments did nothing more than follow the lead of the Pinellas County deputies.
Id. at 1228 (Grimes, J., concurring).
I dissent from that portion of the majority opinion, however, that determines that the department is not a legal cause of the injuries sustained by the plaintiffs. The department initiated the high-speed chase, continued it through Cross City, and requested Taylor County deputies to continue the chase. The department did not actually discontinue the chase, but withdrew only when it knew the chase was being continued by the Taylor County deputies.
The supreme court in Brown addressed three issues: (1) Whether the police owed a legal duty to the Browns; (2) whether the activities of the police were shielded from liability by the doctrine of sovereign immunity; and (3) whether there was a sufficient allegation of proximate causation to create a jury question. It determined that law enforcement entities were to be given deference in their determination to take steps to apprehend the offender, but they owed a duty not to exceed proper and rational bounds or act in a negligent, careless, or wanton manner. Relying on McCain v. Florida Power Corp., 593 So.2d 500 (Fla.1992), the court determined that under the facts of that case, a jury question existed as to proximate cause. The court then noted in a footnote:
[W]e find that police in the present case would have incurred no liability had they honored their departmental policies and discontinued pursuit of Deady, even if Deady later injured someone with his automobile or otherwise. See [Everton v. Willard, 468 So.2d 936, 938 (Fla.1985)]. What the police may not do is themselves needlessly exacerbate the danger to the public. Any danger a suspect poses to the public solely on his or her own cannot be imputed to the police who earlier have failed to make an arrest. Id.

Brown, supra at 1227, n. 8 (emphasis removed). Appellees and the majority argue that this footnote was a valid basis for granting summary judgment in this case.
The Brown court's reliance on Everton implies that the court was concerned that its opinion would create liability for failure to pursue or arrest. Everton involved an action to recover damages resulting from an intoxicated motorist who had been previously stopped by a Pinellas County sheriff's deputy, but who was issued a citation and then released. The supreme court held that the decision to arrest a motorist or to simply issue a citation was a discretionary function, protected by sovereign immunity.
*1157 Read in context, the footnote in Brown does not, as appellees argue, absolve the department of liability. Clearly, the footnote indicates only that had the pursuit ceased, the police would not have incurred liability even if the suspect had continued to speed independent of the police action. In the instant case, appellees' discontinuation of the chase did not cease the pursuit. Rather, appellees remained in pursuit until the Taylor County Sheriff's Office took over. The evidence at trial may ultimately show that the accident occurred not because of the chase, but rather because of the "rolling roadblock," or that appellees, unlike the officers in Brown, did follow department policy in continuing pursuit, or that appellees did pursue the runaway van in a reasonably prudent manner. However, just as the situation in Brown, I believe all of these inferences should be settled by a jury.
In addition, I am unable to say whether the actions of the Taylor County deputies or appellants were either independent or unforeseeable as a matter of law. An intervening cause releases a tort-feasor only when it is fully independent and unforeseeable. Loomis v. Howell, 604 So.2d 1241 (Fla. 1st DCA 1992). The intervention must be independent of the original negligence and must not be set in motion by the original negligence. Id.; Tallahassee Furniture, Inc. v. Harrison, 583 So.2d 744 (Fla. 1st DCA), review denied, 595 So.2d 558 (Fla.1992). Generally, the issue of whether an intervening cause relieves a party of liability is a question of fact for the jury. McCain, supra. The actions of the Taylor County Sheriff's Department and the minor's reckless driving can only absolve appellees if it was unforeseeable that the chase would lead to injury. Clearly, just as in Brown, human experience suggests that bodily injury is likely to occur when a van (which is unlikely to slow down or stop) is pursued at high speeds on a well-trafficked highway. Additionally, the action by the Taylor County Sheriff's Department was not fully independent in light of the fact that the department requested help from the Taylor County Sheriff's Department and that the officers from the department remained in pursuit of the van in Taylor County until the Taylor County Sheriff's Department arrived.
I would reverse the summary judgment in favor of the department.