STONE, J.
The Beach Club, Inc. (the club) sued the appellants (Trembath) for damages caused by Trembath crashing his rental car into the club’s building. The damages included the costs of repair, along with the cost of installing a fire sprinkler system in the building where, after the incident, the dub was discovered to be in violation of the Life Safety Code, established pursuant to section 633.025, Florida Statutes. We conclude that the record demonstrates that the installation of a sprinkler system was not proximately caused by the accident, and reverse.
The facts were stipulated in the trial court, the only issue before the court was whether, as a matter of law, Tremath’s accident could be the proximate cause of the club’s additional damage required in order to comply with the code.
Section 633.025(3) provides that the most current edition of the National Fire Protection Association 101, Life Safety Code, adopted by the state fire marshal, is deemed to be adopted by each city and county as part of its minimum fire safety code. The application of the 1997 version of the code, which became effective just a month prior to the accident, mandated that “assembly occupant” facilities, which would include the club, have fire protection which, here, would include a fire sprinkler system.
The Life Safety Code includes an exception to its requirements for existing buildings that provides:
9-1.1.1 The requirements of this chapter apply to existing buildings or portions thereof currently occupied as assembly occupancies.
Exception: An existing building housing an assembly occupancy established prior to the effective date of this Code shall be permitted to be approved for continued use if it conforms to or is made to conform to the provisions of this Code to the extent that, in the opinion of the authority having jurisdiction, reasonable life safety against the hazards of fire, explosion, and panic is provided and maintained.
The authority having jurisdiction is the fire marshal.
The director of planning for the Town of Palm Beach testified, confirming that prior to the accident, the club, an assembly occupancy building, had not been required by the town to install a fire sprinkler system. The club also offered the testimony of an architect who opined that the club, as an existing building, would not have been required to install the sprinkler system until the fire marshal, in his judgment, believed it was necessary. He further testified that the accident of January 16, 1999, caused the fire marshal, John Wandell, to focus attention on the club.
*514 It is undisputed that the fire sprinkler violation was not picked up in an earlier routine inspection. The fire marshal, however, now inspected the club as a result of the fire caused by the accident. Upon the fire marshal’s inspection, he required, as authorized by the code provisions, that a sprinkler system be installed.
Clearly, even if the club never applied for a building permit, and had let the building stay as is, it would, nevertheless, have been required to put in new sprinklers upon discovery of the existing conditions by a fire marshal. The inspection performed after the accident was the first complete Life Safety Code inspection, although an earlier routine inspection was made by the fire department, whose agents simply completed standard checklists of whether items such as fire extinguishers were in place. The discovery of this violation, however, required a more thorough inspection of the physical structure.
The appellants offered the testimony of John T. Wandell, the fire marshal for the Town of Palm Beach, who ordered the upgrade. His testimony was not challenged. He stated unequivocally that the club was not in compliance with the code before the accident. The marshal testified that the club held functions in the second story of the building and, because he thought fire could progress, there was “a threat to life safety.” When he was able to determine, after the accident, that structural members of the building were not protected, he ordered that the lack of fireproofing be remedied.
Finally, the fire marshal testified that if he had done the same thorough inspection before the accident as he had performed after the accident, he would have reached the same conclusion; that the club was not in compliance with the code. He explained that the accident allowed him to perform a more thorough life safety inspection of the club than might otherwise have occurred. During that inspection, he and the building inspector opened up some tiles and observed exposed steel. The marshal admitted he had inspected the club on a number of occasions over the seventeen years he was fire marshal, but had always assumed that the club was fire rated. When the more in-depth inspection was conducted after the crash, he learned that it was not.
As to routine in-service inspections done by agent ladder personnel, the fire marshal explained that they are not responsible for determining whether a structure is in compliance with the code. Instead, the inspections verified whether fire extinguishers were present and properly maintained. While “sprinklers” were listed on the checklist inspection sheets, if the in-service inspectors indicated “N/A” next to “sprinklers,” that did not mean that the club was found to be exempt; instead, it simply indicated that the sprinklers did not exist.
We conclude that Trembath’s accident was not the proximate cause of the club’s requirement to comply with the code. Rather, the code, when adopted, required that the club comply with its mandates. The club had an affirmative duty to be in compliance with the Life Safety Code, if it did not fall within the exceptions. The fire marshal’s testimony demonstrates that it did not. Responsibility for the club’s decision not to voluntarily comply with the code cannot now be passed off to Trembath simply because his accident indirectly led to the fire marshal’s discovery of the club’s code violations. Therefore, the club, alone, is responsible for the cost of bringing the building into compliance as to this item of damage.
We recognize that under other circumstances the damages for cost of repair may include the expense necessary to conform *515 the repairs to existing building codes. See, e.g., Peluso v. Singer Gen. Precision, Inc., Link Div., 47 Ill.App.3d 842, 8 Ill.Dec. 152, 365 N.E.2d 390 (1977). Here, however, the club was already obligated to make the mandatory repairs.
Prior to the accident, the club was required, by law, to install the sprinkler system and otherwise comply with the code. See Grant v. Thornton, 749 So.2d 529 (Fla. 2d DCA 1999)(reasoning that the owner of property has a duty to comply with applicable codes; it will not be a defense to argue that owner was unaware of his obligation or that he was unaware of non-compliance); Del Risco v. Industrial Affiliates, Ltd., 556 So.2d 1148 (Fla. 3d DCA 1990)(holding that owners and lessors of commercial buildings have a non-delegable duty to comply with fire safety codes). That the club chose not to comply with the 1998 mandate until the fire marshal’s inspection is not grounds for relieving the club of the responsibility.
Before an occurrence can be a proximate cause of a injury, it must be determined to be a cause-in-fact of that injury. Stahl v. Metropolitan Dade County, 438 So.2d 14, 17 (Fla. 3d DCA 1983)(ex-plaining that Florida courts, in accordance with most other jurisdictions, have historically followed the so-called “but for” causation-in-fact test; that is, “to constitute proximate cause there must be such a natural, direct and continuous sequence between the negligence act [or omission] and the [plaintiffs] injury that it can reasonably be said that, but for the [negligent] act [or omission] the injury would not have occurred.” Pope v. Pinkerton-Hays Lumber Co., 120 So.2d 227, 230 (Fla. 1st DCA I960)); see also Dep’t of Transp. v. Anglin, 502 So.2d 896, 899 (Fla.1987)(eiting Stahl, 438 So.2d at 19, stating that “Florida courts, in accord with courts throughout the country, have for good reason been most reluctant to attach tort liability for results which, although caused-in-fact by the defendant’s negligent act or omission, seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant’s negligence. Plainly, the courts here have found no proximate cause in such case based solely on fairness and policy considerations, rather than actual causation grounds.”).
The accident was not the proximate cause, as it was not a cause-in-fact of the club’s requirement to presently upgrade; rather, the duty existed separate and apart from any outside event. The true proximate cause of the expense arose when the code was adopted. See McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992)(holding that the proximate cause element of negligence “is concerned with whether and to what extent the defendant’s conduct foreseeably and substantially caused the specific injury that actually occurred.”).
“[F]or proximate cause to exist, there must be such a natural, direct and continuous sequence between the negligent act and the injury that it can reasonably be said that but for the act the injury would not have occurred.” McDonald v. Fla. Dep’t of Transp., 655 So.2d 1164, 1168 (Fla. 4th DCA 1995)(citing Jones v. Utica Mut. Ins. Co., 463 So.2d 1153 (Fla.1985)). Here, even the club’s expert acknowledged that he could not say that “but for” the collision, the club would not have been required to put in the sprinkler system.
Therefore, the judgment is reversed. On remand, the trial court shall amend the judgment to delete this item of damages.
KLEIN and HAZOURI, JJ., concur.