902 So.2d 244 (2005)
Mark Phillip ST. FORT, a Minor, by and through his Mother and Natural Guardian, Marie Lourdes ST. FORT, Emanual Pernier, a Minor, Priscille Pernier, a Minor, and Alexandra Pernier, a Minor, by and through their Mother and Natural Guardian, Margaret Pernier, Marie Lourdes St. Fort, Individually, Margaret Pernier, Individually, Dominique Auguste, Individually, Teddy St. Fort, Individually, and Vladimir Pierre-Louis, Individually, Appellants,
v.
POST, BUCKLEY, SCHUH & JERNIGAN, Appellee.
No. 4D03-3930.
District Court of Appeal of Florida, Fourth District.
May 18, 2005.
*245 Adam Trop and Maximo Santiago of Grover, Weinstein & Trop, P.A., Miami Beach, for appellants.
Raymond L. Robinson and Myles A. Cochran of Robinson & Associates, P.A., Coral Gables, for appellee.
POLEN, J.
Mark Phillip St. Fort, et al., appeal a final summary judgment in favor of Post, Buckley, Schuh & Jernigan, Inc. ("Post Buckley"), and denial of rehearing in a negligence action. St. Fort argues that the trial court erred in holding that defendants were not liable because the action by *246 another person in rear-ending the St. Fort vehicle constituted the active and efficient intervening cause for any alleged damages. We agree and reverse.
On November 30, 1990, at approximately 10:30 p.m., St. Fort and several other adults and children were passengers in a motor vehicle on the southbound Sheridan Street ramp to I-95 in Broward County. St. Fort alleged that the vehicle was forced to come to a sudden stop due to the dangerous condition of the access ramp. In particular, St. Fort alleged that the ramp "existed, and/or was maintained, in a hazardous condition, in that there was insufficient space for ingress/egress, insufficient visibility, insufficient stopping space, insufficient emergency access, and/or other improper/insufficient and dangerous circumstances." While the vehicle was stopped on the access ramp, a vehicle operated by Mason Fuchs rear-ended the St. Fort vehicle, allegedly as a result of the dangerous roadway conditions, and caused the St. Fort vehicle to collide with a retaining wall, causing its occupants serious, permanent bodily injuries.
Post Buckley and co-defendants, Florida Department of Transportation ("FDOT"), Archer Western Contractors, and Morrison Knudsen Engineers, were involved in a construction project on the section of I-95 where the accident occurred. Post Buckley was hired by Morrison Knudsen Engineers to provide on-site consulting, engineering, and inspection services ("C.E.I.") for the highway construction project at or near the subject on-ramp. Prior to the date of the accident, defendants had created a new on-ramp, altering the acceleration lane and merge area onto I-95. The new ramp was not constructed in compliance with FDOT specifications. The design plan called for a 400 foot long acceleration lane, but it was actually constructed to be zero feet. Additionally, the plan called for a 250 foot long merge area, but it was actually constructed closer to 200 feet. Defendants admitted that the way the ramp existed at the time of the accident did not accord with the construction plan.
As Trooper Barry Radanof testified "the entire roadway was under construction, and there was no  the way the ramp dumps into that lane, the extreme right-hand outer lane, as we call it  the ramp just dumps into it. There's no merge lane there." Radanof also testified that there were two retaining walls dividing the approach ramp and the main lane of I-95 during construction, one wall on the ramp and one on the I-95 side. These walls could obstruct the driver's view on the ramp looking out the left window trying to find a break to enter I-95 traffic.
At the time of the accident, Vladimir Pierre-Louis was driving the St. Fort vehicle. He testified in deposition that there was not much light where he was driving up the ramp approaching I-95, and he could barely see where he was going with his headlights on. There were no overhead street lights. He did not recall seeing any lighting poles, nor any reflectors along the roadway. Fuchs, the driver of vehicle that rear-ended the St. Fort vehicle, also testified in deposition that there was absolutely no lighting on the access ramp. Fuchs testified that, although there were lights on I-95, the ramp area was "pitch black." Fuchs was unable to see that there was a car in front of him until he was only eight to ten feet away. In contrast, Trooper Radanof testified in deposition that "it was dark, but it was lit with the regular street lighting on the interstate."
Pierre-Louis did not see any barricades with flashing lights near Sheridan Street and the southbound ramp or any signs indicating that there was construction *247 work ahead. He also did not see any type of signs indicating that he was to merge with I-95 traffic. Fuchs and Radanof also testified that they did not recall seeing any warning signs posted.
As Pierre-Louis came up the ramp and approached I-95, he could see that he did not have enough room to enter traffic: "I didn't have enough room. Usually in most intersections I would drive in, they would give me a good 20, 50 yards to merge with the flow of traffic. I did not have that." The traffic on I-95 was "pretty busy." He was forced to stop and look for a gap in traffic to enter. While still on the ramp, he brought the car to a complete stop for 15 to 20 seconds. Pierre-Louis then saw a gap in the moving traffic and was preparing to move out into the main line of traffic when he was rear-ended by Fuchs' vehicle. Pierre-Louis's vehicle was in first gear, he had removed his right foot from the brake pedal and put it on the gas pedal, and his left foot was coming off the clutch when he was rear-ended. Fuchs, who was accelerating to enter traffic, was traveling at approximately 55 miles an hour.
Under the "Contributing Causes-Road" section of Trooper Radanof's report, he listed the code for "Road under repair/construction." Radanof stated in his deposition:
If [Fuchs' vehicle] had a merge lane at that point and was accelerating, it possibly wouldn't have happened. Not to say [Fuchs' vehicle] couldn't have accelerated up to a hundred miles per hour and rear-ended him. Crazier things have happened. But I don't think this particular crash would have happened if there was a merge lane.
St. Fort, et al. sued defendants for negligence, alleging that they owed a duty of reasonable care to plaintiffs to avoid creating dangerous conditions and/or to warn of any dangerous conditions at or near the intersection, and to further make safe any and all dangerous conditions of which they knew or should have known. St. Fort alleged that defendants breached said duty though all or some of the following:
(a) Failing to provide adequate warnings or any warnings;
(b) Designing a dangerous/hazardous condition;
(c) Creating a dangerous/hazardous condition;
(d) Failing to provide adequate lighting;
(e) Failing to provide sufficient ingress and/or egress;
(f) Failing to provide any lighting;
(g) Failing to provide sufficient emergency access;
(h) Failing to provide adequate stopping distance;
(i) Failing to provide sufficient merging distance; & /or
(j) Was otherwise negligent.
St. Fort offered expert testimony in the form of the deposition of Ralph Aaronberg, a consulting engineer who has performed traffic engineering design work. His opinion of the case included the following:
(1) That the acceleration lane and merge area for [the ramp] at the time of the accident was insufficient;
(2) That that was a contributing cause to this accident, that caused the car in which the Plaintiffs were riding in to come to a stop, as it would have to do if there were to be any southbound traffic on I-95, so that it could move right into I-95, whereas if you were to have an acceleration lane and merge area, you do not have to bring the vehicle to a stop;
(3) That that condition existed for some period of time and it was causing this problem for some period of *248 time as it is reflected by prior accidents that were occurring;
(4) That the area as it existed was not on the original design plans;
(5) That the contractor and CEI would both have responsibility to keep track of accidents that were occurring in that area, and take actions as required to be able to alleviate the hazardous conditions that had been created; and that should have taken place well before this accident occurred;
(6) In my opinion, as soon as you have an area where people are stopping on a merge area, then that alone is enough to tell you that you have a hazardous condition.
Aaronberg opined that the primary cause of the accident was the hazardous condition of the roadway, not Fuchs' rear-ending the St. Fort vehicle:
Aaronberg: In my opinion, the primary cause of the accident would be the hazardous manner in which the roadway existed at the time that the accident occurred, meaning the lack of an appropriate merge lane for traffic coming from Sheridan Street, forcing vehicles on Sheridan Street to come to a stop, forcing people that were entering from Sheridan onto southbound I-95 to come to a stop in an area where it is very hazardous to bring a vehicle to a stop. That, I believe, is the primary cause of the accident.
Defense: Mr. Aaronberg, it's not your opinion that the primary cause of this accident was Mason Fuchs' rear-ending of the plaintiff's vehicle?
Aaronberg: No, because Mr. Fuchs wouldn't have rear-ended the vehicle if the vehicle had not been there to rear-end.
Defendants moved for summary judgment on the grounds that Fuchs' rear-ending of the St. Fort vehicle constituted the active and efficient intervening cause for any alleged damages. The trial court entered final summary judgment in favor of all defendants, specifically relying on Clark v. L. & A. Contracting Co., 730 So.2d 288 (Fla. 3rd DCA 1998), and Department of Transportation v. Anglin, 502 So.2d 896 (Fla.1987). The court denied St. Fort's motion for rehearing. Since filing the initial brief, St. Fort settled with all defendants except Post Buckley.
We hold that the trial court erred in granting summary judgment for defendants by concluding that the rear-ending of the St. Fort vehicle by another person constituted intervening negligence. We review a grant of summary judgment de novo. Selim v. Pan Am. Airways Corp., 889 So.2d 149, 153 (Fla. 4th DCA 2004). Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to a judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). "[T]he movant for summary judgment in a negligence case has the heavy burden of showing unequivocally that there was no negligence." Palmer v. Liberty Nat'l Life Ins. Co., 499 So.2d 903 (Fla. 1st DCA 1986).
First, we hold that the trial court erroneously based its ruling upon the "authority" of Clark v. L. & A. Contracting Co., 730 So.2d 288 (Fla. 3d DCA 1998). We reiterate that a per curiam affirmance without written opinion, even one with a written dissent, has no precedential value and should not be relied on for anything other than res judicata. As this court held in State v. Swartz, 734 So.2d 448 (Fla. 4th DCA 1999):
As has been stated countless times before, a per curiam affirmance decision without written opinion has no precedential value and should not be *249 relied on for anything other than res judicata. Without a written opinion, the trial court could only speculate regarding the rationale underlying this court's per curiam affirmance decision.
Id. at 448. See also Dep't of Legal Affairs v. Dist. Ct. of Appeal, 5th Dist., 434 So.2d 310, 311 (Fla.1983) ("The issue is whether a per curiam appellate court decision with no written opinion has any precedential value. We hold that it does not."). In Department of Legal Affairs, the Florida Supreme Court held that a per curiam affirmed "citation from another court has no relevance for any purpose and is properly excluded from a brief or oral argument." 434 So.2d at 312. In Munnerlyn v. Wingster, 825 So.2d 481, 483 (Fla. 5th DCA 2002), the court held that a party's reliance on a per curiam affirmance with a dissenting opinion, even from its own court was "misplaced," since a dissenting opinion has no precedential value. Clearly, it was improper for the trial court to rely on Clark as authority in granting final summary judgment to Post Buckley.
In the present case, controverted evidence regarding proximate causation precluded summary judgment, and the trial court erred when it found as a matter of law that Fuchs' rear-ending the St. Fort vehicle constituted the intervening cause for any alleged damage. When the evidence is viewed in the light most favorable to St. Fort, the jury could find Post Buckley liable for creating an allegedly dangerous condition and failing to properly warn of the danger.
Under the doctrine of intervening negligence, the original negligence is not regarded as the "proximate cause" of the injury, even though the injury might not have occurred but for the original negligence, if an independent efficient cause intervenes between the negligence and the injury and the original negligence does not directly contribute to the force or effectiveness of the intervening cause. Tampa Elec. Co. v. Jones, 138 Fla. 746, 190 So. 26, 27 (1939); see, e.g., Brady v. State Paving Corp., 693 So.2d 612 (Fla. 4th DCA 1997) (owner's intervening negligence in not correcting known defect was proximate cause of injury, relieving contractor of liability for installing defective product). Moreover, "[i]t is only when an intervening cause is completely independent of, and not in any way set in motion by, the tortfeasor's negligence that the intervening cause relieves a tortfeasor from liability." Deese v. McKinnonville Hunting Club, Inc., 874 So.2d 1282, 1287-88 (Fla. 1st DCA 2004). If the alleged intervening cause is foreseeable, the original negligent actor may still be liable. Id. at 1288; Gibson v. Avis Rent-A-Car Sys., Inc., 386 So.2d 520, 522 (Fla.1980).
One approach to determining whether the intervening cause was foreseeable is to ask if the harm that occurred was "within the scope of the danger attributable to the defendant's negligent conduct." Gibson, 386 So.2d at 522. Negligence liability may arise when one violates a duty of care by creating a dangerous situation. Id. The relevant question becomes whether the dangerous situation resulted in a type of harm within the scope of the risk created by the defendant's conduct. Id. Means of answering the latter question include showing (1) "that the particular defendant had actual knowledge that the same type of harm has resulted in the past from the same type of negligent conduct" and/or (2) that it is "the type of harm that has so frequently resulted from the same type of negligence that `in the field of human experience the same type of result may be expected again.'" Id. at 522-23. (citations omitted). See also McCain v. Fla. Power Corp., 593 So.2d *250 500, 503 (holding harm is proximate in the legal sense where "human experience teaches that the same harm can be expected to recur if the same act or omission is repeated in a similar context").
The trial court determined on summary judgment that Fuchs' rear-ending of the St. Fort vehicle constituted the intervening cause, and thus, the proximate cause of St. Fort's injuries, relieving Post Buckley from any negligence liability. Proximate cause, however, is generally a jury question. Circumstances under which a court may resolve proximate cause as a matter of law are extremely limited. LeMaster v. Glock, Inc., 610 So.2d 1336 (Fla. 1st DCA 1992). As the Florida Supreme Court stated in McCain, 593 So.2d at 504:
Unlike in the "duty" context, the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. Thus, where reasonable persons could differ as to whether the facts establish proximate causation  i.e., whether the specific injury was genuinely foreseeable or merely an improbable freak  then the resolution of the issue must be left to the fact-finder.... The judge is free to take this matter from the fact-finder only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.
Accord Anglin, 502 So.2d 896. An alleged intervening negligence will not cut off the original negligent actor's liability unless the intervening cause is "a highly unusual, extraordinary or bizarre occurrence flowing from" the original negligence. Stahl v. Metro. Dade County, 438 So.2d 14, 22 (Fla. 3d DCA 1983).
In the case at bar, the trial court erred in granting summary judgment on the basis of intervening negligence because St. Fort presented substantial evidence that collisions on the ramp were a foreseeable consequence of defendants' negligent construction and maintenance of the temporary ramp. The record is abundant with evidence that Post Buckley had actual and/or constructive knowledge that the on-ramp configuration posed a significant hazard to motorists. Consulting engineer Aaronberg gave expert testimony that, prior to the subject accident, eight accidents occurred involving this specific merge area, two of which were rear-end accidents on the ramp. A jury could reasonably find that Fuchs' negligence in rear-ending the St. Fort vehicle was precisely the type of conduct Post Buckley had a duty to prevent, by constructing a safe entrance ramp or providing adequate warning as to the temporary ramp's allegedly hazardous conditions. Here, where "reasonable persons could differ as to whether the facts establish proximate causation  i.e., whether the specific injury was genuinely foreseeable or merely an improbable freak  then the resolution of the issue must be left to the fact-finder." McCain, 593 So.2d at 504. Because the evidence supports more than a single reasonable inference, the trial court was not free to take this matter from the fact-finder. Id.
Another approach to the issue of intervening negligence is asking whether defendants' negligence conduct "set[] in motion a chain of events resulting in injury to the plaintiff" or whether it "simply provided the occasion for the negligence of another." Gibson, 386 So.2d at 520; Anglin, 502 So.2d at 898. "The law is well settled in this state that a remote condition or conduct which furnishes only the occasion for someone else's supervening negligence is not a proximate cause of the result of the subsequent negligence." Pope v. Cruise Boat Co., Inc., 380 So.2d 1151, 1153 (Fla. 3d DCA 1980) [quoting *251 Matthews v. Williford, 318 So.2d 480, 481 (Fla. 2d DCA 1975)].
Post Buckley argues that even if it were negligent, it merely provided the occasion for the accident and was not the legal cause. Post Buckley relies on Clark, Anglin, Pope and Metropolitan Dade County v. Colina, 456 So.2d 1233 (Fla. 3d DCA 1984). To the contrary, we hold that those cases are distinguishable from the case at bar and the instant case is instead controlled by the principle that defendants set in motion a chain of events that led to St. Fort's injuries. "[O]ne who is negligent is not absolved of liability when his conduct "sets in motion" a chain of events resulting in injury to the plaintiff." Gibson, 386 So.2d at 522.
Contrary to the trial court's explicit reliance upon Anglin, that case does not support a summary judgment in the case at bar. In Anglin, as the plaintiffs' truck crossed a railroad track, they drove through a six-inch deep puddle of water, resulting in the truck's engine dying. 502 So.2d at 897. They pushed the vehicle toward the side of the road, but were unable to restart it. They then pushed it back onto the roadway, where they attempted to push-start it. The Anglins pushed one hundred yards, but were still unable to start the engine. At that point, about fifteen minutes after the engine had died, a truck driven by Edward DuBose passed the Anglins headed in the opposite direction. "DuBose traveled a short distance, slammed on his brakes, spun around before reaching the puddle of water, and headed back toward the Anglin's vehicle," intending to offer assistance. Id. "With the engine roaring and at a speed approaching forty miles per hour, DuBose failed to stop and slammed into the back of the Anglin's truck," causing Mrs. Anglin serious injury. Id. at 897-98. The Anglins alleged that negligent design of the railroad tracks and roadway allowed water to accumulate in an unsafe manner. Id. at 898. The Florida Supreme Court held summary judgment in favor of the defendants was proper because, as a matter of law, DuBose's actions constituted an intervening cause. It held that DuBose's actions in recklessly rushing to aid the Anglins and losing control of his vehicle "were so far beyond the realm of foreseeability that, as a matter of law and policy, the [defendants] cannot be held liable for the [plaintiff's] injuries." Id. at 899. Thus, the court held that "it was not reasonably foreseeable that DuBose would act in such a bizarre and reckless manner." Id. at 899-900. The bizarre and extraordinary sequence of events in Anglin differs significantly from the present case. Here, it was readily foreseeable that absent an acceleration lane and adequate warning signs, vehicles on the ramp would be forced to slow or stop, thereby inviting rear-end collisions. Moreover, Fuchs' conduct, unlike that of DuBose in Anglin, was certainly not bizarre, reckless, and far beyond the realm of foreseeability. Therefore, the trial court should not have relied on Anglin in granting defendants summary judgment in this case.
In Pope, the trial court entered summary judgment against a plaintiff struck by a truck when stepping off the shoulder into the street in an attempt to go around a boat parked perpendicular to the street on the edge of Cruise Boat's premises. 380 So.2d at 1152. Pope alleged that Cruise Boat breached its duty to maintain the premises in a reasonably safe condition and that the issue of negligence should have been a question for the jury. Id. The third district affirmed the entry of summary judgment, reasoning, under the principle of supervening negligence, that Cruise Boat's negligence was not the proximate cause of the pedestrian's injuries *252 because it merely furnished the occasion for the pedestrian's own negligence in stepping into the oncoming traffic. Id.
Finally, Post Buckley's reliance on Colina is also misplaced. In that case, the plaintiff driver approached an intersection with a non-functioning traffic light, appreciated the hazardous condition and stopped his vehicle. While stopped, the plaintiff saw a car coming in the opposite direction, and, hoping to beat oncoming traffic, proceeded into the intersection even though he knew the oncoming driver may not stop. The third district reversed the judgment entered against the county for negligence in failing to repair the traffic light. The court explained:
Any negligence on Dade County's part simply provided the occasion for the actions of [the other driver] and Colina, which together were the proximate cause of Mrs. Colina's death. Both [the other driver] and Colina could see that the traffic light was not functioning and, by complying with statutory requirements, could have avoided the collision. To hold the county liable on these facts would make it an insurer of motorists acting in disregard of their own safety and that of others. Such a responsibility would be an unwarranted social burden. Finding that reasonable persons could not differ on the proximate cause issue, we reverse the trial court's order denying the county's motion for directed verdict.
456 So.2d at 1235 (citation omitted). Thus, the drivers' respective actions constituted superseding, intervening causes, and the county's alleged negligent maintenance of the traffic signal did not proximately cause the accident. The instant case is distinguishable because, in the absence of mandated warning signs regarding the nonexistence of an acceleration lane and lack of adequate lighting, Fuchs could not fully appreciate the hazardous configuration of the ramp, nor was he aware that vehicles would be stopped ahead of him. In contrast, Colina stopped in a safe position, observed the oncoming car, and voluntarily chose to proceed into the intersection, breaking the chain of causation.
The instant case is more closely aligned with Gibson. One of the defendants in Gibson, Arata, while intoxicated, had stopped his vehicle for no apparent reason on an inner lane of the interstate highway. 386 So.2d at 521. A second automobile stopped behind Arata, and the driver of that automobile exited his car and began directing traffic around both vehicles. Id. The plaintiff was able to stop his car a few feet from the second car, and was immediately struck from behind by a fourth vehicle driven by codefendant McNealy. Id. The trial court granted a directed verdict in favor of Arata on the theory that McNealy's negligence constituted an efficient, intervening cause insulating Arata and the third district affirmed. Gibson v. Avis Rent-A-Car System, Inc., 362 So.2d 960, 961 (Fla. 3d DCA 1978). The supreme court quashed the third district's decision, holding that the question of whether McNealy's negligence was an intervening cause relieving Arata of liability should not have been decided as a matter of law. The supreme court stated: "[O]ne who is negligent is not absolved of liability when his conduct `sets in motion' a chain of events resulting in injury to the plaintiff." It held that "the question of whether to absolve a negligent actor of liability is more a question of responsibility. If an intervening cause is foreseeable the original negligent actor may still be held liable." 386 So.2d at 522. (citations omitted). Additionally, it held that the question of whether an intervening cause is foreseeable is a question for the trier of fact. Id.
*253 The supreme court analyzed the proximate cause issue by asking if the dangerous situation the defendant created resulted in a type of harm that was within the scope of the risk created by the defendant's conduct. Id. It explained that means of answering the latter question include showing "that the particular defendant had actual knowledge that the same type of harm has resulted in the past from the same type of negligent conduct" or that it is "the type of harm that has so frequently resulted from the same type of negligence that `in the field of human experience the same type of result may be expected again.'" Id. at 522-23 (internal citations omitted). Applying that framework, the court held that "a reasonable person would have to conclude that stopping a car in the middle of an interstate where the speed limit was fifty-five miles an hour, created a risk that other cars might collide as a result of trying to avoid hitting the stopped vehicle." Id. at 523. Therefore, it concluded that whether McNealy's conduct was an intervening cause sufficient to insulate Arata from liability could not be decided by the trial court as a matter of law. It ordered a new trial so that a jury could resolve the causation issue.
In the case at bar, as in Gibson, the rear-ending of the St. Fort vehicle was not "a highly unusual, extraordinary or bizarre occurrence flowing from" the original negligence of defendants in creating a hazardous condition on the ramp. See Stahl, 438 So.2d at 22. St. Fort presented substantial evidence that collisions on the ramp were a foreseeable consequence of defendants' negligent construction and maintenance of the temporary ramp. Here, the trial court erred in not allowing the fact-finder to resolve the issue of proximate causation, since reasonable persons could differ as to "whether the specific injury was genuinely foreseeable or merely an improbable freak." McCain v. Fla. Power Corp., 593 So.2d 500, 504 (Fla.1992); accord Anglin, 502 So.2d 896. Therefore, we reverse the order of summary judgment and remand this case to the trial court for further proceedings in accordance with this opinion.
GUNTHER and HAZOURI, JJ., concur.