502 So.2d 896 (1987)
DEPARTMENT OF TRANSPORTATION, Petitioner,
v.
Cleopatra Gayle ANGLIN, et al., Respondents.
SEABOARD COAST LINE RAILROAD COMPANY, Petitioner,
v.
Cleopatra Gayle ANGLIN, et al., Respondents.
Nos. 67599, 67600.
Supreme Court of Florida.
February 5, 1987.
*897 Ronald W. Brooks of Brooks & Callahan, Tallahassee, for State of Florida Dept. of Transp.
C. DuBose Ausley, William M. Smith and Stephen C. Emmanuel of Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, for Seaboard System Railroad, Inc.
William Whitaker, Karl O. Koepke and Hurley P. Whitaker of Whitaker & Koepke, Chartered, Orlando, for respondents.
EHRLICH, Justice.
We have for our review Anglin v. Department of Transportation, 472 So.2d 784 (Fla. 1st DCA 1985), wherein the district court relied on our decision in Gibson v. Avis Rent-a-Car System, Inc., 386 So.2d 520 (Fla. 1980), which involved a materially different factual situation in arriving at its conclusion. We have jurisdiction, article V, section 3(b)(3), Florida Constitution, and quash the decision below.
Cleopatra Anglin, her husband and his brother were driving their 1965 model pickup truck on alternate U.S. 27 in rural Polk County on the evening of September 3, 1979. It had been raining throughout the day as a result of Hurricane David. At approximately 8:30 p.m. it was still drizzling when the Anglins crossed a Seaboard Coast Line Railroad track and drove through a six-inch deep puddle of water which covered both lanes of the highway. The water evidently doused the truck's engine, causing it to sputter for some distance before it finally died. The Anglins pushed their vehicle off the side of the road and unsuccessfully attempted to restart it. The Anglin brothers then pushed their vehicle back on the roadway and attempted to start it by having Mrs. Anglin "pop the clutch" once the truck reached a certain speed. After pushing the vehicle approximately one hundred yards up a small incline, the roadway leveled off. It appears from the record that Mrs. Anglin was not adept at starting an engine by popping the clutch, so her husband stopped pushing, ran forward to the driver's seat and jumped in, while his brother continued pushing the vehicle; Mrs. Anglin exited the vehicle, joined her brother-in-law and started pushing. At this point, approximately fifteen minutes after the Anglin's truck hit the puddle of water, a truck driven by Edward DuBose passed the Anglins heading in the opposite direction; someone in the DuBose vehicle yelled to the Anglins that they would be back to help. According to the testimony below DuBose traveled a short distance, slammed on his brakes, spun around before reaching the puddle of water, and headed back toward the Anglin's vehicle. With the engine roaring and at a speed approaching forty miles per hour, DuBose failed to stop and slammed into the back of the Anglin's truck. Mrs. Anglin was pinned between *898 the two vehicles causing injuries which resulted in amputation of both her legs.
The Anglins filed a complaint against Seaboard and the Department of Transportation alleging negligence in the design of the railroad tracks and the roadway by allowing the accumulation of water on the roadway immediately adjacent to the tracks. The defendants filed a motion for summary judgment which was granted by the trial court who reasoned that, as a matter of law, the actions of the Anglins in leaving their place of safety and placing their disabled vehicle back on the highway, plus the actions of DuBose in losing control of his vehicle, were independent, efficient intervening causes of the accident which broke the chain of causation between the defendants' alleged negligence and the plaintiff's injury.
The district court reversed, finding that "it cannot be said as a matter of law that an injury to plaintiff was not within the scope of danger or risk arising out of the alleged negligence." 472 So.2d at 787.
Even assuming that petitioners were negligent in allowing this pooling of water on the highway adjacent to the railroad track, we disagree with the district court's conclusion and find that, as a matter of law, the actions of DuBose constituted an independent, efficient, intervening cause of the Anglins' injuries. Liability for these injuries, therefore, may not legally be attached to any conduct of the petitioners.
The district court's analysis of what constitutes an independent, efficient, intervening cause correctly concludes that for the original negligent actor to be relieved of liability, the intervening cause must be "truly independent of and not `set in motion' by the original negligence." 472 So.2d at 787. According to the district court, if an intervening cause is reasonably foreseeable the original negligent defendant may still be held liable; whether an intervening cause is foreseeable is a question for the trier of fact. Id. at 788. The district court relied on our decision in Gibson for these principles and evidently the court viewed the defendants' negligently allowing a puddle of water to stand in the road as an act which "set in motion" a chain of events which culminated in the Anglins' injuries. We disagree with this conclusion. While it is undisputed that petitioners' negligence was a factual cause of the Anglins' predicament (i.e., "but for" the puddle of water, the Anglins' vehicle would not have stalled), petitioners' negligence simply provided the occasion for the negligence of another. See, e.g., Metropolitan Dade County v. Colina, 456 So.2d 1233 (Fla. 3d DCA 1984), review denied, 464 So.2d 554 (Fla. 1985); Pope v. Cruise Boat Co., 380 So.2d 1151 (Fla. 3d DCA 1980).
The district court has read our decision in Gibson too broadly and has applied it to a materially different factual situation. In Gibson we recognized that a negligent party is not liable for another's injuries when a separate force or action is the active and efficient intervening cause, the sole proximate cause or an independent cause. 386 So.2d at 522. However, we distinguished this principle from situations where the original negligent conduct "sets in motion" the chain of events which culminates in injury to the plaintiff. Id. It was in this context that we stated: "If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact." Id. The negligent conduct at issue in Gibson did set in motion a chain of events which resulted in the plaintiff's injuries. The defendant, Arata, while intoxicated, stopped his car in one of the inner lanes of an interstate highway, causing a second car to stop behind him which in turn caused Gibson to stop behind the second car; once Gibson stopped, a fourth car driven by McNealy struck Gibson's car forcing it into the second car. The trial court granted Arata's motion for directed verdict but denied McNealy's, ruling that McNealy's negligence was an efficient, intervening cause. Id. at 521. We held that this was error and found that in this context a jury question was presented because Arata's stopping his *899 car in a lane of an interstate highway set in motion a chain of events which a reasonable person could have foreseen would create "a risk that other cars may collide as a result of trying to avoid hitting the stopped vehicle." Id. at 523. Gibson did not hold, as suggested by the district court's holding below, that all questions involving an intervening cause present a jury question. Indeed, as we held in National Airlines, Inc. v. Edwards, 336 So.2d 545 (Fla. 1976):
"Appellants suggest that the issue is one of reasonable foreseeability and that only the jury can apply that test. This proposition cannot be true because under it every allegation of a breach of duty no matter how remote from an injury would result in a jury trial. The question of proximate cause is one for the court where there is an active and efficient intervening cause."
Id. at 547 (quoting Kwoka v. Campbell, 296 So.2d 629, 631 (Fla. 3d DCA), cert. denied, 304 So.2d 450 (Fla. 1974)).
A more accurate assessment of the correct standard to apply in determining when a question of proximate cause should be submitted to the jury was cogently set forth in Stahl v. Metropolitan Dade County, 438 So.2d 14, 21 (Fla. 3d DCA 1983):
Given the debatable nature of proximate cause issues in most such cases, it is not surprising that the courts have held that such issues are generally for juries to decide using their common sense upon appropriate instructions, although occasionally, when reasonable people cannot differ, the issue has been said to be one of law for the court.
We recognized in Gibson that "the question of whether to absolve a negligent actor of liability is more a question of responsibility" than simply one of factual causation. 386 So.2d at 522. As is explained in Prosser and Keaton on The Law of Torts, 272-273 (5th ed. 1984):
Once it is established that the defendant's conduct has in fact been one of the causes of the plaintiff's injury, there remains the question whether defendant should be legally responsible for the injury. Unlike the fact of causation with which it is often hopelessly confused, this is primarily a problem of law. It is sometimes said to depend on whether the conduct has been so significant and important a cause that the defendant should be legally responsible. But both significance and importance turn upon conclusions in terms of legal policy, so that they depend essentially on whether the policy of the law will extend the responsibility for the conduct to the consequences which have in fact occurred.
(Footnotes omitted.)
The policy of the law will of course not allow tort liability to attach to all conduct factually "caused" by a defendant:
Florida courts, in accord with courts throughout the country, have for good reason been most reluctant to attach tort liability for results which, although caused-in-fact by the defendant's negligent act or ommission, seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant's negligence. Plainly, the courts here have found no proximate cause in such cases based solely on fairness and policy considerations, rather than actual causation grounds.
Stahl v. Metropolitan Dade County, 438 So.2d at 19.
The district court below correctly characterized the actions of DuBose as an independent, intervening cause. 472 So.2d at 787. The error in the court's analysis of whether a jury question was presented lies in the court's failure to perceive that, even assuming that petitioners had created a dangerous situation, the actions of DuBose were so far beyond the realm of foreseeability that, as a matter of law and policy, the petitioners cannot be held liable for the respondents' injuries. While it may be arguable that petitioners, by creating a dangerous situation which caused the respondents to require assistance, could have reasonably foreseen that someone may attempt to provide such assistance, it was not *900 reasonably foreseeable that DuBose would act in such a bizarre and reckless manner. Petitioners' negligent conduct did not set in motion a chain of events resulting in injuries to respondents; it simply provided the occasion for DuBose's gross negligence. See, e.g., Mull v. Ford Motor Company, 368 F.2d 713 (2d Cir.1966).
Accordingly, we quash the decision below and remand for proceedings consistent with this opinion.
It is so ordered.
McDONALD, C.J. and OVERTON, SHAW and BARKETT, JJ., concur.
ADKINS, J. (Ret.), dissents with an opinion.
ADKINS, Justice (Ret.), dissenting.
I dissent. This Court should dismiss the petitions to review the instant case, as jurisdiction was improvidently granted. The majority, in its haste to remove the question of proximate causation from the jury's consideration, points to alleged conflict with Gibson v. Avis. There simply is no conflict.
The majority finds conflict on the basis that the district court below applied our decision of Gibson v. Avis, "which involved a materially different factual situation in arriving at its conclusion." At 897. This is indeed a weak basis for exercising our jurisdiction, since every case involves a different factual situation, and Gibson reached a conclusion harmonizing very smoothly with the result reached by the district court below. The instant majority opinion, in fact, is the only opinion at all clashing with Gibson. The majority's holding simply cannot be reconciled with our observation in Gibson that "[t]he question of whether an intervening cause is foreseeable is for the trier of fact." 386 So.2d at 522.
Jurisdiction has indeed been improvidently granted in this case. Through the device of claiming jurisdiction based on conflict with Gibson, the majority has both effectively gutted Gibson and penalized the district court for correctly doing its duty and applying this Court's precedent. If we were to exercise jurisdiction, it should have only been to approve the opinion of the district court.