874 So.2d 1282 (2004)
Charles Van DEESE, as personal representative of the estate of Parker Deese, Appellant,
v.
McKINNONVILLE HUNTING CLUB, INC., Appellee.
No. 1D03-2157.
District Court of Appeal of Florida, First District.
June 18, 2004.
*1283 William Rankin, Esq. of Kerrigan, Estess, Rankin & McLeod, LLP, Pensacola; Louis K. Rosenbloum, Esq. of Louis K. Rosenbloum, P.A., Pensacola, for Appellant.
Robert C. Palmer, III, Esq. of Shell, Fleming, Davis & Menge, P.A., Pensacola, for Appellee.
LEWIS, J.
Appellant, as the personal representative of Parker Deese, appellant's deceased son (the "decedent") seeks review of the trial court's Summary Final Judgment entered in favor of appellee, the McKinnonville Hunting Club, Inc. Appellant argues *1284 on appeal that the trial court erred in granting appellee's motion for summary judgment because issues of fact remain as to whether appellee's alleged negligence in operating a dog hunt near a road having a fifty-five-mile-per-hour speed limit was the proximate cause of the decedent's death. We agree and, therefore, reverse and remand for further proceedings.
On December 19, 1998, appellant and the decedent, who was then twelve years old, participated in a hunt organized and conducted by appellee in which dogs were used to drive deer through land[1] in Escambia County that was leased to appellee by Champion Paper Company ("Champion") toward County Road 99 ("CR 99"), which is a two-lane highway having a speed limit of fifty-five-miles-per-hour. According to appellant, who was a member of appellee's hunting club at the time of the decedent's accident, he and the decedent were on the east side of CR 99 during the first drive hunt and had been told by appellee's president to move to the west side of CR 99 for the second drive hunt. Because appellant was unsure as to where he needed to park his truck for the second hunt, appellant followed a fellow hunter, J.B. Mahan, in his truck which, at that point, held appellant, his wife, his young daughter, and the decedent. Mahan pulled out from the east side of CR 99, and appellant pulled out from the west side of CR 99 heading south. After following Mahan for "a couple hundred yards," Mahan informed appellant via radio that they needed to back up to catch some of the dogs that were beginning to come out of the woods from the last drive. Appellant then pulled onto the west side of CR 99 and noticed Mahan and his granddaughter on the east side of CR 99 attempting to catch dogs that were running "everywhere." According to appellant, club members were directed to try to catch the dogs when possible. While sitting on the side of CR 99, the decedent sought appellant's permission to help catch the dogs. Although appellant initially denied the decedent's request, appellant shortly thereafter told the decedent that he could help catch the dogs. Appellant was in the process of turning back around in his seat after having given the decedent permission to catch the dogs when the decedent opened the door and "t[ook] off." The decedent, who exited the truck through the driver's side door, was struck by a vehicle traveling in the northbound lane of CR 99 and died three days later. According to appellant, only two or three minutes elapsed between the time he pulled off onto the side of CR 99 and the moment in which the decedent exited the truck.
Appellant subsequently filed suit against appellee, alleging that appellee breached its duty to promulgate, draft, and enforce rules and regulations to ensure that club activities would be conducted in the safest manner possible and that, as a direct and proximate result of such negligence, the decedent was struck by a vehicle and died. As affirmative defenses, appellee asserted that the decedent was negligent in crossing the road, which caused or contributed to his death, and that any damages suffered by appellant were the result of his actions or omissions, which caused or substantially contributed to the decedent's death. In response to appellant's request for admissions, appellee admitted, inter alia, the following: (1) that it had a duty to promulgate, draft, and enforce rules and regulations that would cause members to hunt and conduct activities on the leased *1285 property in a reasonable manner reducing the possibility of death and injury to members and their families or others; (2) that it had a duty to conduct activities in compliance with the club's rules and regulations; (3) that it was advised by Champion that a hunting party must be large enough to handle the dog pack effectively; and (4) that it has no specific rules or regulations about hunting with children. While appellee admitted that it was advised by Champion that a huntmaster who is not hunting must be in control of the hunt, appellee averred in its response that one of Champion's employees had orally amended this requirement. Although appellee admitted that it was advised by Champion that a core dog hunt area would be identified on a map, it denied that this was done by Champion. While appellee admitted that members' vehicles were parked on the side of the roadway during hunts, it asserted that this occurred only so long as the vehicles were not on the legal right-of-way. Appellee denied that Champion specified that areas between the dog hunt core area and the external boundary should be designated as still-hunting only, that it had no rules or regulations addressing the danger of dog hunting on paved highways, that it would, on occasion, drive the deer with dogs towards paved roadways within and bordering its leased areas, and that the members would line up adjacent to the roadway with guns in an effort to shoot at deer that are driven towards the road by the hunting dogs.
The record contains a letter dated December 3, 1986, from Champion to appellee's then-treasurer explaining that Champion had received specific complaints concerning appellee's members hunting immediately adjacent to CR 99. Because Champion considered the possibility of injury so great, it added the following clause to every hunting lease that year:
No officer, member, employee or guest of the Lessee will conduct any hunting activity within 100 feet of any federal, state or county road right-of-way. The same rules that apply to hunting activity on a public road right-of-way will, for Champion's purposes, extend the additional 100 feet onto Champion property.
Several of Champion's prior employees, who testified via deposition that they had received numerous complaints over the years that appellees' members trespassed on other people's property and hunted on the roadways, also testified that appellee's members were only supposed to hunt in appellee's core area. Champion's Styx Forest Dog Retention Policy for the 1997-1998 hunting season explained:
A core dog hunt area will be identified on a map. Areas between the dog hunt core area and the external boundary should be designated as still hunting only. This will give clubs a second opportunity to capture any dogs missed on the edge of the core area and minimize trespassing complaints. This will also allow the hunting party to hunt deer more, and dogs less, by keeping the dogs to a smaller more confined area.
Mark E. Free, a former forest representative for Champion, testified that the hunting that occurred on the day of the decedent's accident took place in a highly critical area notwithstanding the fact that such areas were to be avoided. Other prior employees of Champion testified that Champion had provided appellee with a map designating those areas and that no one had told appellee that Champion's rules could be ignored. Kenneth Watson, a law enforcement lieutenant with the Florida Fish and Wildlife Commission, who testified via deposition that he had received complaints dating back to 1983 concerning appellee's dogs trespassing on *1286 neighbors' property and appellee's members hunting along the roadways, also testified that he agreed with one of Champion's employees that appellee was the worst hunting club in Escambia County.
W.H.F. Wiltshire, whom appellant listed as an expert, testified via deposition that he had been hunting since he was five years old and had been a member of a different hunting club since 1969. In Wiltshire's opinion, appellee did not plan the hunt on the day of the accident. Rather,
"[t]hey just got together that morning, and somebody in the group said `let's hunt that particular area,' and that's where they went." Wiltshire also opined that a huntmaster should have been appointed to handle the hunt on the day of the accident, that the hunt drive should not have been operated towards CR 99, and that the hunters should not have been placed in the right-of-way during the period of time when the two drives were taking place. Wiltshire thought it equally troubling that appellee was intending to run the dogs towards the highway and to catch the dogs on the highway, practices which are dangerous to the dogs, traffic, and those attempting to catch the dogs.
J.B. Mahan testified via deposition that it was not uncommon for the hunting dogs to cross the road during the hunts. Lonnie Majors, appellee's president at the time of the accident, similarly testified via deposition that the club's dogs had been killed on the roadways in the past. When asked if there was a pretty good chance of dogs winding up in the road when hunting adjacent to the road in the area where appellee's members were on the day of the accident, Majors replied, "There's always the chance." Majors then acknowledged that there was a reasonable chance that the dogs would "get into the area of the road." According to Majors, although he had been designated as the huntmaster on the day of the accident, he had hunted along with appellee's other members.
Thereafter, appellee filed a motion for summary judgment, arguing that the record conclusively demonstrated that there was no direct causal relationship between any act or omission on behalf of appellee and the decedent's death and that the causal chain that appellant would have to prove was clearly broken by the independent acts of appellant, the decedent, and the driver of the vehicle that struck the decedent. Appellee requested that the trial court enter an order finding as a matter of law that there was no negligence on appellee's part and that its actions were not the proximate legal cause of the accident resulting in the decedent's death. The court granted appellee's summary judgment motion, citing Garcia v. Metropolitan Dade County, 561 So.2d 1194 (Fla. 3d DCA 1990), and entered a Summary Final Judgment, adjudging that appellant take nothing by the action. This appeal followed.
A party seeking summary judgment in a negligence action has a more onerous burden than that borne in other types of cases. Cassoutt v. Cessna Aircraft Co., 660 So.2d 277, 281 (Fla. 1st DCA 1995) (citations omitted). A trial court must draw all reasonable inferences in favor of the non-moving party when ruling upon a motion for summary judgment. Id. (citation omitted). "Summary judgment should be granted cautiously, with full recognition of the right of a litigant to a jury trial on the merits of his cause." Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1096 (Fla. 1st DCA 1999). If the record reflects even a possibility of a material issue of fact, then summary judgment must be denied. Id. (citation omitted). This Court reviews the trial court's judgment de novo. See Noack v. Blue Cross & *1287 Blue Shield of Fla., Inc., 859 So.2d 608, 609 (Fla. 1st DCA 2003).
In the instant case, appellee moved for summary judgment on the issue of proximate cause and argues on appeal that the only issue before this Court is whether its conduct foreseeably and substantially caused the decedent's death. Proximate causation consists of both cause in fact and foreseeability. Coker v. Wal-Mart Stores, Inc., 642 So.2d 774, 776 (Fla. 1st DCA 1994). The "so-called `but-for' causation-in-fact-test" sets forth that "`to constitute proximate cause there must be such a natural, direct, and continuous sequence between the negligence [sic] act [or omission] and the [plaintiff's] injury that it can reasonably be said that but for the [negligent] act [or omission] the injury would not have occurred.'" Stahl v. Metro. Dade County, 438 So.2d 14, 17 (Fla. 3d DCA 1983) (quoting Pope v. Pinkerton-Hays Lumber Co., 120 So.2d 227, 230 (Fla. 1st DCA 1960) (emphasis in original)). In McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992), the Florida Supreme Court explained:
The duty element of negligence focuses on whether the defendant's conduct foreseeably created a broader "zone of risk" that poses a general threat of harm to others.... The proximate causation element, on the other hand, is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred. In other words, the former is a minimal threshold legal requirement for opening the courthouse doors, whereas the latter is part of the much more specific factual requirement that must be proved to win the case once the courthouse doors are open. As is obvious, a defendant might be under a legal duty of care to a specific plaintiff, but still not be liable for negligence because proximate causation cannot be proven.
. . .
However, as the Restatement (Second) of Torts has noted, it is immaterial that the defendant could not foresee the precise manner in which the injury occurred or its exact extent. Restatement (Second) of Torts § 435 (1965). In such instances, the true extent of the liability would remain questions for the jury to decide. On the other hand, an injury caused by a freakish and improbable chain of events would not be "proximate" precisely because it is unquestionably unforeseeable, even where the injury may have arisen from a zone of risk. The law does not impose liability for freak injuries that were utterly unpredictable in light of common human experience. Thus, as the Restatement (Second) of Torts has noted, a trial court has discretion to remove the issue from the jury if, "after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that [the conduct] should have brought about the harm." Restatement (Second) of Torts § 435(2) (1965).
Unlike in the "duty" context, the question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve. Thus, where reasonable persons could differ as to whether the facts establish proximate causationi.e., whether the specific injury was genuinely foreseeable or merely an improbable freakthen the resolution of the issue must be left to the factfinder.... The judge is free to take this matter from the fact-finder only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.
(emphasis in original).
It is only when an intervening cause is completely independent of, and *1288 not in any way set in motion by, the tortfeasor's negligence that the intervening cause relieves a tortfeasor from liability. See Townsend v. Westside Dodge, Inc., 642 So.2d 49, 50 (Fla. 1st DCA 1994) (citation omitted). "It is not necessary for the initial tortfeasor to foresee the exact nature of the ensuing injury or the precise manner in which it occurs, as long as he or she is able to foresee that some injury is likely to result in some manner as a consequence of the negligent act." Id. It is only when reasonable persons could not differ on the issue of foreseeability that a court may decide as a matter of law that a certain act or conduct constitutes an independent, efficient intervening cause. Pamperin v. Interlake Cos., 634 So.2d 1137, 1139 (Fla. 1st DCA 1994) (citing Dep't of Transp. v. Anglin, 502 So.2d 896, 899 (Fla.1987)). "One who establishes a remote condition which furnishes only the occasion for another's [intervening] negligence is not deemed to be a proximate cause of the resulting accident unless the intervening cause was foreseeable." Cho v. Mackey, 567 So.2d 1064, 1065 (Fla. 2d DCA 1990) (citations omitted).
In granting appellee's summary judgment motion, the trial court cited to the Third District's opinion in Garcia, 561 So.2d at 1194. There, the appellant, a minor child, was struck and injured by an automobile while walking to school with his mother. Id. at 1195. The appellant crossed N.W. 32nd Street without his mother's permission. Id. The appellant's parents filed suit against Metropolitan Dade County and the Dade County School Board, alleging that Dade County had created a dangerous condition by having failed to maintain a crosswalk at the intersection where the accident occurred and that the School Board had invited and encouraged students and their parents to cross N.W. 32nd Street by designating that route as safe while knowing and failing to warn that the route was not in a designated school zone, that there had been prior accidents, and by failing to act upon complaints. Id. Both appellees moved for summary judgment, claiming, inter alia, a lack of proximate cause. Id. In affirming the trial court's summary judgment, the Third District noted that the appellant was under his mother's "direct control and supervision immediately before the occurrence of the accident." Id. The court also set forth that "[n]o number of traffic signals, traffic control devices, or safe route to school maps can provide any greater protection for a child than the attendant supervision of his parent." Id. According to the court, the presence or absence of traffic control devices or warnings had no relationship to the occurrence of the accident. Id. The court determined that there was no evidence to support the claim that additional traffic control devices or warnings would have brought about a different result since the appellant's mother did not see the automobile prior to the accident. Id. In concluding that the sole proximate cause of the appellant's injuries was his act of stepping into the street without keeping a proper lookout while under his mother's control, the court cited to its previous decision in Pope v. Cruise Boat Co., 380 So.2d 1151, 1153 (Fla. 3d DCA 1980), for the proposition that "`[t]he law is well settled in this state that a remote condition or conduct which furnishes only the occasion for someone else's supervening negligence is not a proximate cause of the result of the subsequent negligence.' " Id.; see also Pope, 380 So.2d at 1151-53 (affirming the trial court's summary judgment and holding that the appellee's action or omission in permitting vehicles and a boat to be situated near the street was not the proximate cause of the appellant's injuries that resulted after the adult appellant, who "chose" to walk on the *1289 shoulder of a county street, stepped off of the shoulder into the street because of the protruding boats and vehicles and was struck by an oncoming truck).
We agree with appellant that Garcia does not support summary judgment in this case. While the court in Garcia found that the presence or absence of traffic control devices or warnings had no relationship to the occurrence of the accident and that there was no evidence that additional devices or warnings would have brought about a different result, here, it can reasonably be said that the accident would not have occurred had appellee not operated a hunt so close to CR 99. As appellee's president testified, there was a reasonable chance that the dogs would get near the road. Moreover, Garcia, does not present a situation in which Dade County set in motion a chain of events that resulted in the child's death. In other words, the lack of control devices or warnings did not cause the child to run across the street unattended. Here, in contrast, it was appellee's act of holding a hunt near CR 99 that led to the dogs being near CR 99 and the decedent's desire to assist in catching the dogs.
Interestingly, in Brunson v. Dade County School Board, 559 So.2d 646 (Fla. 3d DCA 1990), which was decided shortly after Garcia, the Third District reversed the trial court's order granting summary judgment in a case with facts very similar to those in Garcia. There, the appellant, who was the father and personal representative of the decedent, a minor child, appealed the trial court's summary judgment entered in favor of the Dade County School Board, the appellee. Id. at 647. The child had been transferred from his assigned school to a more distant school for speech therapy. Id. A clerical error prevented bus service from being provided. Id. For two weeks, the appellant took the child, by public bus, to the stop nearest the school and then walked the child the rest of the way. Id. The appellant then allowed the child, then nine years of age, to make the trip alone. Id. While crossing a busy street, the child was struck and killed by an automobile. Id. The School Board argued that the appellant's act of allowing his son to travel alone constituted an active and efficient intervening cause which relieved it of liability. Id. In reversing the trial court's summary judgment order, the Third District noted that if the child was too young to make the trip alone, then a jury question would arise as to comparative negligence. Id. at 648. The court concluded that the appellant's allegedly deficient conduct was "`set in motion by the original wrongful act ....'" and was not such a new and independent cause as to create an intervening cause. Id. (quoting Loftin v. McCrainie, 47 So.2d 298, 302 (Fla. 1950) (other citations omitted)). Notably, the court explained that even if the case was viewed as a matter of intervening cause, it would nonetheless reverse because the question of whether an intervening cause is foreseeable is ordinarily for the trier of fact. Id. at 648 n. 2; see also Dykes v. City of Apalachicola, 645 So.2d 50, 51-53 (Fla. 1st DCA 1994) (reversing the trial court's summary judgment entered in favor of the appellee and holding that the appellant's twelve-yearold son, who was struck by an oncoming car while mowing the lawn on the right-ofway in front of a house, did not constitute an independent, intervening cause that insulated the appellee from liability and that it could not be said that it was unforeseeable that a pedestrian would emerge from the overgrown foliage on the right-of-way); Stahl, 438 So.2d at 16-23 (reversing the trial court's summary judgment entered in favor of Metropolitan Dade County because the court did not find that the child's act of riding off of the bike path in an attempt to avoid a poorly maintained area, which resulted in the child being struck by *1290 a vehicle and killed, constituted a highly unusual, extraordinary, or bizarre occurrence, noting that it did not wish to imply that the child could not be found comparatively negligent, and distinguishing Pope on the basis that the appellant there had no momentum problem since she had been walking).[2]
In contending that Garcia is applicable to the facts of the instant case, appellee relies on appellant's act of permitting the decedent to exit his vehicle and the decedent's alleged failure to look both ways before crossing CR 99. However, Brunson suggests that any failure or deficiency on appellant's part in permitting the decedent to exit his vehicle would constitute a jury question on the issue of comparative negligence. Furthermore, Stahl suggests that any negligence on the decedent's part would also be a question for the jury.
Given the facts of this case, such as the fact that appellee was aware that its members were hunting near CR 99, that there was a reasonable chance that the dogs would enter the roadway, that dogs had been killed on the roadway, and the fact that club members were directed to try to catch the dogs when possible, appellee was able to foresee that some injury to an individual, especially a child, was likely to result in some manner as a consequence of its alleged negligent acts. See McCain, 593 So.2d at 502 (noting that it is immaterial that the defendant can not foresee the precise manner in which the injury occurred or its exact extent); Townsend, 642 So.2d at 50 (holding that it is not necessary for the initial tortfeasor to foresee the exact nature of the injury or the precise manner in which the injury occurs as long as he or she is able to foresee that some injury is likely to result in some manner as a consequence of his or her negligence). As the supreme court has held and as the cases cited herein demonstrate, the issue of proximate causation focuses on a specific factual inquiry and should generally be left to the fact-finder to resolve. See McCain, 593 So.2d at 502; Pamperin, 634 So.2d at 1139 (noting that the circumstances under which a court may resolve the question of proximate cause as a matter of law are extremely limited). Because we are unable to say that reasonable persons could not differ as to whether the facts of this case establish that appellee's action in conducting a hunt near CR 99 constituted the proximate cause of the decedent's death, we REVERSE the trial court's Summary Final Judgment and REMAND the case for further proceedings.
ALLEN and PADOVANO, JJ., Concur.
NOTES
[1] According to appellee's then-president, Lonnie Majors, the hunting area consisted of "[e]ight thousand something acres." The record indicates that drive hunting entails using dogs to chase deer to those open areas in which hunters have a clear shot.
[2] Notably, Judge Ferguson of the Third District later explained that he could not subscribe to the mode of locomotion theory as adequately distinguishing Pope from Stahl. See Barrish v. State, Dep't of Transp., 509 So.2d 340, 340-41 (Fla. 3d DCA 1987) (Ferguson, J., specially concurring) (concurring in the majority's affirmance of the trial court's summary judgment order because the case was factually indistinguishable from Pope while noting that the case was also factually similar to Stahl).