KAHN, J.
Appellant Barbara Cooke seeks review of an adverse final summary judgment dismissing a suit arising from the death of her husband, Gary Cooke. The claim here involves multiple vehicles and two accidents that occurred on a stretch of southbound Interstate 75 in Alachua County. We reverse because the negligence, if any, of appellant’s decedent was not an intervening and superseding cause acting to break the chain of causation, which appellant claims was initiated by the negligence of one or more of the appellees.

BACKGROUND

Gary Cooke died when his sport utility vehicle collided with the back of a flatbed truck driven by Robert Kindler, not a party to this appeal. Mr. Cooke was operating his vehicle at the posted speed limit of 70 m.p.h. Mr. Kindler, using downshifting, had slowed his truck to a speed of 20 to 30 m.p.h.
Farther south on Interstate 75, perhaps as far as one and one-half miles, but the precise distance not being shown in the present record, another accident had occurred earlier. Although the facts of this earlier accident (“first accident”) may be disputed later in this litigation, for purposes of summary judgment, we recite the facts in a light most favorable to appellant, who was the non-moving party in the trial court. The first accident occurred when appellee Hector Ramirez (Ramirez), operating a tractor-trailer owned by appellee United Parcel Service, Inc. (UPS), encountered, or nearly encountered, a phantom vehicle that entered the southbound lane in which Ramirez was operating. Ramirez steered the UPS truck into the emergency lane, striking another tractor-trailer owned by Carrera Transport, Inc., and properly parked in the lane. The impact scattered UPS packages across the southbound lanes of Interstate 75. A little more than an hour after the first accident, Mr. Cooke met his demise in the second accident when his vehicle collided with Mr. Kin-dler’s.
The record shows that as a result of the first accident, southbound traffic on Interstate 75 had slowed and backed up to the crest of a hill north of the scene of the first accident. Deputy Hanson of the Alachua County Sheriffs Office parked his patrol car in the southbound emergency lane, with the hill between his car and the scene of the first accident. Deputy Hanson switched on his warning lights and ignited three or four roadside flares. According to Hanson’s testimony, traffic continued to move at a high rate of speed southbound past the patrol car. Deputy Hanson observed that most vehicles did not begin to *1194 slow and apply their brakes until reaching the top of the hill, at which point the drivers of those vehicles would have been able to see the first accident and the traffic that had backed up as a result of the debris strewn across the highway.
Mr. Kindler was operating at just below the posted speed limit of 70 m.p.h. when he passed the Hanson patrol car. Kindler did not see the emergency flares previously deposited by Deputy Hanson. Nevertheless, Kindler had been notified on his citizens’ band radio of traffic backups and lane closures ahead of him. Accordingly, after passing the patrol car, Mr. Kindler switched on his four-way flashers and slowed by downshifting his truck. Ultimately, and upon reaching the crest of the hill north of the first accident and south of Deputy Hanson’s patrol car, Mr. Kindler was traveling between 20 and 30 m.p.h.
As Kindler approached the scene of the first accident, and perhaps as Kindler was cresting the hill, the vehicle driven by Mr. Cooke collided with Kindler’s truck. Expert testimony suggests that Mr. Cooke had not slowed, and was, in fact, traveling at the posted speed limit of 70 m.p.h. Although Deputy Hanson estimated that the second accident occurred only 180 yards north of the first accident, subsequent investigations put the intervening-distance at a higher figure, perhaps as great as one and one-half miles.
Mr. Kindler gave a bit more detail as to the traffic conditions on Interstate 75. He testified that at the point of the second accident, the center lane was moving at about 25 m.p.h., and the left lane was moving at a pace somewhat less than the normal highway speed. The right lane was void of traffic, because it was blocked ahead, owing to the first accident.
Mrs. Cooke brought a wrongful death action, alleging that her husband’s death had been caused by the negligence, or combined negligence, of the phantom vehicle, Ramirez, UPS, and Carrera Transport. Appellee Nationwide Mutual Fire Insurance Company, as the uninsured motorist carrier for the Cookes, stands in the place of the phantom vehicle. The trial court dismissed Carrera Transport as a party to this suit. After pretrial discovery, UPS and Ramirez moved for summary judgment, as did Nationwide. The trial court granted the motions with the following ultimate conclusion of law:
In this case, the slowing of traffic from the first accident, which resulted from an impact involving a vehicle owned by Defendant UPS (which was driven by Defendant HECTOR L. RAMIREZ) and a Carrera Transport vehicle and was allegedly initiated by the actions of a “phantom vehicle,” merely provided an occasion for Mr. Cooke’s negligence, which caused the second accident. This court finds, as a matter of law, that Mr. Cooke’s actions and omissions constituted an intervening and superseding cause that acted to break the chain of causation.

ANALYSIS

“Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.” Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). “Thus, our standard of review is de novo.” Id. In resolving this appeal, we must determine whether the trial court properly found the actions of appellees did not, as a matter of law, proximately cause Mr. Cooke’s death. “[Wjhere reasonable persons could differ as to whether the facts establish proximate causation — i.e., whether the specific injury was genuinely foreseeable or merely an improbable freak — then the resolution of the issue must be left to the fact-finder.” *1195 McCain v. Fla. Power Corp., 593 So.2d 500, 504 (Fla.1992) (emphasis in original). A trial judge may take the matter of proximate causation from the fact-finder “only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.” Id.
The doctrine of intervening and superseding cause sometimes stands as a factor in the proximate causation analysis. Nevertheless, the existence of such an intervening cause — generally the agency, act, or negligence of another, not a defendant in the action — does not always insulate the original negligent actor. Without commenting upon whether the ultimate facts will demonstrate negligence on the part of either Ramirez or the phantom vehicle, we note that a negligent actor “is not absolved of liability when his conduct ‘sets in motion’ a chain of events resulting in injury to the plaintiff.” Gibson v. Avis Rent-A-Car Sys., Inc., 386 So.2d 520, 522 (Fla.1980). “If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact.” Id.
In considering the subject of intervening cause, this court has explained that, for such cause to sufficiently absolve the negligent party, “it must be independent of the original negligence, and it must not be set in motion by the original negligence.” Loomis v. Howell, 604 So.2d 1241, 1243 (Fla. 1st DCA 1992). An intervening cause stands as a barrier between the original negligence and the ultimate injury only if it is “fully independent and unforeseeable.” Id. The law will not require that “the original tort-feasor foresee the precise injury or the precise manner in which an injury occurs; it is enough that the resulting injury is within the scope of risk created by the original tort-feasor.” Id.
In arguing the negligence of appellant’s decedent constituted an intervening and superseding cause, appellees rely heavily upon Department of Transportation v. Anglin, 502 So.2d 896 (Fla.1987), and its progeny. Appellant, urging reversal of the summary judgment order, relies upon the rule of law emanating from Gibson. We examine the teachings of each case.
In Anglin, the plaintiff operated a truck on a highway wet from excessive rainfall related to a hurricane. 502 So.2d at 897. As the truck crossed a railroad track and drove through a deep puddle of water, the engine sputtered and died. Id. Plaintiff and her passengers then attempted to restart the truck by pushing the vehicle and utilizing the manual transmission. Id. About fifteen minutes later, another vehicle headed in the opposite direction passed the stalled Anglin vehicle. Id. The other vehicle went a short distance, slammed on its brakes, spun around, and headed back toward the Anglin vehicle. Id. Unfortunately, the driver of the second vehicle failed to stop and crashed into the back of the Anglin truck, causing serious personal injury. Id. at 897-98. Anglin filed suit against the railroad company, which maintained the tracks, and against the Florida Department of Transportation, which maintained the roadway, alleging negligence of one or both of these defendants in maintaining the railroad crossing so that a puddle of accumulated water proximately caused plaintiff’s injuries in the later accident. Id. at 898.
The circuit court entered summary judgment in favor of the railroad and the Department, finding that the actions of the second motorist, who turned abruptly, returned to the scene, and lost control of his vehicle, “were independent, efficient intervening causes of the accident which broke the chain of causation between the defendants’ alleged negligence and the plaintiffs *1196 injury.” Id. This court reversed but the supreme court reinstated the defense summary judgment. Id. at 898-900. The supreme court explained that tort liability will not attach “for results which, although caused-in-fact by the defendant’s negligent act or omission, seem to the judicial mind highly unusual, extraordinary, bizarre, or, stated differently, seem beyond the scope of any fair assessment of the danger created by the defendant’s negligence.” Id. at 899 (quoting Stahl v. Metro. Dade County, 438 So.2d 14, 19 (Fla. 3d DCA 1983)). According to the supreme court’s analysis, the actions of DuBose, the second motorist, “were so far beyond the realm of foreseeability that, as a matter of law and policy, the petitioners cannot be held liable for the respondents’ injuries.... [I]t was not reasonably foreseeable that DuBose would act in such a bizarre and reckless manner.” Id. at 899-900.
One cannot read Anglin without noting the colorful language the court utilized to explain the negligence of DuBose, which the court saw as the immediate cause of Anglin’s injuries. The court characterized DuBose’s actions as “far beyond the realm of foreseeability,” “bizarre,” and “reckless.” Id. at 899-900. We understand the court’s use of those terms as suggesting the remoteness, in terms of foreseeability, of the intervening negligence of DuBose, when compared to the allegations of negligent maintenance of a railroad crossing. Although the Anglin opinion describes the rare situation where the question of intervening cause will be taken from the finder of fact, the court also conceded the general rule: “ ‘Given the debatable nature of proximate cause issues in most such cases, it is not surprising that the courts have held that such issues are generally for juries to decide using their common sense upon appropriate instructions, although occasionally, when reasonable people cannot differ, the issue has been said to be one of law for the court.’ ” Id. at 899 (quoting Stahl, 438 So.2d at 21).
While clearly bound by the rule of Anglin, this court has not been reluctant to distinguish that case in instances where its rule would not be appropriate. See, e.g., Dykes ex rel. Dykes v. City of Apalachicola, 645 So.2d 50, 53 (Fla. 1st DCA 1994) (characterizing the rule of Anglin as applicable “only when conduct obviously falls within ‘unusual, extraordinary or bizarre’ category”); Pamperin v. Interlake Cos., Inc., 634 So.2d 1137, 1139 (Fla. 1st DCA 1994); Tallahassee Furniture Co. v. Harrison, 583 So.2d 744, 756 (Fla. 1st DCA 1991) (“In order for an intervening cause to relieve the negligent party from liability, such intervening cause must be truly independent of and not set in motion by the original negligence.”). In another case from this court declining to apply the Anglin rule, we explained that the tidal judge may take from the fact-finder the question of foreseeability as it relates to proximate cause “ ‘only where the facts are unequivocal, such as where the evidence supports no more than a single reasonable inference.’ ” Deese v. McKinnonville Hunting Club, Inc., 874 So.2d 1282, 1287 (Fla. 1st DCA 2004) (quoting McCain, 593 So.2d at 504).
Urging that Anglin’s rule does not encompass the present facts, appellant directs us to Gibson and similar cases. Under such cases, where the supposed intervening cause is foreseeable, the original negligent actor may still be liable for the resulting injuries. See St. Fort ex rel. St. Fort v. Post, Buckley, Schuh & Jernigan, 902 So.2d 244 (Fla. 4th DCA 2005); Deese, 874 So.2d at 1287-88; Zwinge v. Hettinger, 530 So.2d 318 (Fla. 2d DCA 1988). We agree with appellant that the present case is more closely aligned with Gibson and its progeny than with Anglin.
*1197 In Gibson, one of the defendants, Frank Arata, stopped his vehicle for no apparent reason on an inner lane of the interstate highway. 386 So.2d at 521. A second automobile stopped behind Arata, and the driver of that automobile exited and began directing traffic around both stopped cars. Id. The ultimate plaintiff stopped his car a few feet from the second car, but was subsequently struck from behind by yet a fourth vehicle driven by a co-defendant, McNealy. Id. At trial, the presiding judge granted a directed verdict in favor of Arata on the theory that McNealy’s negligence served as an efficient intervening cause insulating Arata from any liability for injuries suffered by the ultimate plaintiff. Id.
After an affirmance by the Third District, Gibson v. Avis Rent-A-Car Sys., Inc., 362 So.2d 960 (Fla. 3d DCA 1978), the supreme court took jurisdiction and quashed the appellate decision. Gibson, 386 So.2d at 521-23. Apropos of the present case, the supreme court observed, “[0]ne who is negligent is not absolved of liability when his conduct ‘sets in motion’ a chain of events resulting in injury to the plaintiff.” Id. Accordingly, if an intervening cause, such as Mr. Cooke’s alleged negligence in the present case, is foreseeable, the original negligent actor may still be held liable. Id. The question of whether the intervening cause is foreseeable is for the trier of fact. Id.
We decide the present case under Gibson, because nothing in the chain of events leading to Mr. Cooke’s death strikes us as extraordinary, bizarre, or “ ‘beyond the scope of any fair assessment of the danger created by [appellees’] negligence.’ ” Anglin, 502 So.2d at 899 (quoting Stahl, 438 So.2d at 19). The first accident in this case occurred on an interstate highway, before dawn, and at a point just beyond a hill, so as to obscure, at least somewhat, the view of oncoming motorists. The second accident, the one at issue in this case, occurred when Mr. Cooke failed to heed, or perhaps to even notice, the warning flares set out by the deputy (which warning flares were also not seen by the driver of the truck struck by Mr. Cooke). Mr. Cooke did not slow down and collided with the rear of the Kindler truck. Although a reasonable fact-finder could view this scenario as a chain of events, such chain is not attenuated, and is certainly not one beyond the anticipation of those involved in the first accident. The fact-finder could, accordingly, find the chain of events, including Mr. Cooke’s actions, foreseeable.
Finally, we note that the present fact pattern does not reveal the classic intervening act of negligence, such as that of the over-eager and careless DuBose in the Anglin case. Here, traffic slowed as a natural result of the first accident, and Mr. Cooke struck another vehicle that was part of the line of slowed traffic. Mr. Cooke’s negligence, if any, including his failure to heed the cautionary measures initiated by Deputy Hanson, could be properly viewed by the finder of fact as evidence of comparative negligence. The plaintiff’s own negligence does not, of course, serve to abrogate a chain of causation arising from the alleged tortfeasor’s negligence, but rather serves as a defensive matter, which may reduce the damages awardable to the plaintiff in an appropriate case. See, e.g., Hancock v. Dep’t of Corr., 585 So.2d 1068 (Fla. 1st DCA 1991).

CONCLUSION

Under the law as set out above, we need not assess the extent of Mr. Cooke’s own negligence, except to observe that such negligence was not unforeseeable as a matter of law. Accordingly, the question of foreseeability in this case will be for the finder of fact and should not be decided as *1198 a matter of law by classifying Mr. Cooke’s actions as the intervening and superseding cause of appellant’s loss, injury, and damages.
REVERSED AND REMANDED.
CLARK, J., concurs and DAVIS, J., Dissents with Opinion.