# DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
## FOURTH DISTRICT

**LUIS ANGEL SERRANO, CENTRAL FLORIDA EQUIPMENT RENTALS, INC.,** and **TARA LYNN CLARK,**
Appellants,

v.

**ADDISON GRACE DICKINSON, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** and
**BIOMET 31, LLC** d/b/a **ZIMMER BIOMET DENTAL,**
Appellees.

No. 4D22-742

[June 14, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Laurie E. Buchanan, Judge; L.T. Case No. 562020CA001533.

Charles M-P "Chip" George of Law Offices of Charles M-P George, Coral Gables, and Maria Dalmanieras of Boyd Richards Parker Colonnelli, Miami, for appellants Luis Angel Serrano and Central Florida Equipment Rentals, Inc.

Nichole J. Segal of Burlington & Rockenbach, P.A., West Palm Beach, and Christopher W. Kellam of Keller, Melchiorre & Walsh, Jupiter, for appellant Tara Clark.

Sharon C. Degnan of Kubicki Draper, Orlando, for appellee Addison Grace Dickinson.

Raymond A. Haas and Gabriella Lopez of HD Law Partners, Tampa, for appellee Biomet 31, LLC.

GROSS, J.

The plaintiff and two defendants involved in a multi-vehicle accident appeal a final summary judgment entered in favor of defendants Addison Dickinson and Biomet 31, LLC. We reverse, concluding that the circuit court erred in ruling that an intervening cause relieved Dickinson and Biomet of all liability for Dickinson's negligence.

*Facts*

This case arises out of two accidents that occurred within a short time on a rainy afternoon on the Florida Turnpike.

Dickinson lost control of her Jeep, which collided with the median barrier and came to rest in the middle of the two southbound lanes, partially blocking each lane. An off-duty police officer pulled his SUV onto the right shoulder of the highway, just south of the Jeep.

After the Jeep came to a stop, Dickinson got out because it was filled with smoke and smelled of oil. Her first thought was "to get off the roadway," so she went to the center median. Then she noticed the officer on the right shoulder, so she crossed the road, believing that it "would be a safer place to go."

Plaintiff Tara Clark drove a Camaro in the left southbound lane, traveling behind Dickinson. The plaintiff slowed down her car to avoid a collision with Dickinson's Jeep, ultimately coming to a stop or a near stop. She saw Dickinson get out of her vehicle and walk to the middle of the Turnpike.

Meanwhile, Briana Bruning was driving a semi-truck in the right southbound lane. She had been traveling about 50-55 mph because of the rain, but she started braking when she saw the Jeep stopped in the middle of the highway. Bruning was "quite a way[] back" and did not need to slam on her brakes. She also turned on her hazard lights. She braked in a normal fashion and came to a complete stop. She estimated that the braking process took at least a minute. The plaintiff's reconstruction expert estimated that Bruning decelerated for at least 15 or 16 seconds before coming to a stop.

Less than two seconds after Bruning came to a complete stop, a semi-truck driven by defendant Luis Serrano ran into the back of the Bruning truck at between 60 and 65 mph. Serrano did not apply his brakes until less than a second before impact; he had been traveling between 68 and 73 mph for the previous 86 seconds before braking.

The crash impact caused Serrano's truck to jackknife. A backhoe loader that had been on the flatbed of Serrano's truck dislodged and landed on top of the plaintiff's Camaro. The plaintiff suffered a shattered ankle and other injuries as a result of the collision.

The forward-facing dash camera on Bruning's truck captured two videos related to the accident. One video is a 20-second clip of Bruning approaching Dickinson's stopped Jeep, coming to a complete stop at about the 9 second mark, being jolted forward at the 10 or 11 second mark, and coming to a final rest at the 17 second mark. The beginning of this video also shows Dickinson crossing from the median of the Turnpike over to the off-duty officer's SUV on the right shoulder.

About one to one-and-a-half minutes elapsed between Dickinson's accident and Serrano's accident.

### *The Lawsuit*

The plaintiff sued Dickinson and her employer, Biomet, alleging that Dickinson negligently operated the Jeep and that Biomet was vicariously liable for her negligence. The plaintiff also sued Serrano and his employer Central Florida Equipment Rentals, Inc. ("CFER"), alleging that Serrano negligently operated his vehicle and that CFER was vicariously liable for his negligence. The plaintiff also alleged that CFER was independently negligent for various reasons, including a failure to maintain the truck.

Biomet moved for summary judgment, contending that the "negligent repair, maintenance, and driving" of the Serrano truck was the superseding cause of the plaintiff's injuries.

Dickinson joined in Biomet's motion. She argued that Serrano's negligent actions in colliding with Bruning's truck "constituted [an] intervening cause, breaking the chain of causation between the alleged negligence of Defendant Dickinson and Plaintiff's injuries."

The circuit court granted summary final judgment in favor of Dickinson and Biomet. Relying upon the video, the court concluded that the "Plaintiff and the semi-truck in the right lane were stopped for a significant period of time, prior to the semi-truck of Defendant Serrano coming into contact with the fully-stopped vehicles." The court reasoned in part that Serrano's failure to stop was an intervening cause, superseding any negligence of Dickinson and Biomet. This appeal ensued.

### *Standard of Review and Summary Judgment Standard*

The standard of review for orders granting summary judgment is de novo. *Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.*, 760 So. 2d 126, 130 (Fla. 2000).

3

Under the new version of Florida Rule of Civil Procedure 1.510(a), summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "[T]he correct test for the existence of a genuine factual dispute is whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d 72, 75 (Fla. 2021) (internal quotation marks omitted).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[S]ummary judgment is highly unusual in a negligence action where the assessment of reasonableness generally is a factual question to be addressed by the jury." *King v. Crossland Sav. Bank*, 111 F.3d 251, 259 (2d Cir. 1997).

### *Proximate Cause and Intervening Cause*

The notion of an intervening cause that absolves a negligent actor of liability is conceptually tied into the proximate cause element of negligence.

A negligence claim consists of four elements: (1) a duty recognized by law; (2) breach of the duty; (3) proximate causation; and (4) damages. *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003).

The element of proximate causation "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

"[H]arm is 'proximate' in a legal sense if prudent human foresight would lead one to expect that similar harm is likely to be substantially caused by the specific act or omission in question." *Id.* at 503. "[I]t is not necessary that the initial tortfeasor be able to foresee the exact nature and extent of the injuries or the precise manner in which the injuries occur." *Crislip v. Holland*, 401 So. 2d 1115, 1117 (Fla. 4th DCA 1981).

"[T]he question of foreseeability as it relates to proximate causation generally must be left to the fact-finder to resolve." *McCain*, 593 So. 2d at 504. "The judge is free to take this matter from the fact-finder only where the facts are unequivocal, such as where the evidence supports no more

4

than a single reasonable inference." *Id.* "Circumstances under which a court may resolve proximate cause as a matter of law are extremely limited." *St. Fort ex rel. St. Fort v. Post, Buckley, Schuh & Jernigan*, 902 So. 2d 244, 250 (Fla. 4th DCA 2005). "[W]here reasonable persons could differ as to whether the facts establish proximate causation—i.e., whether the *specific* injury was genuinely foreseeable or merely an improbable freak— then the resolution of the issue must be left to the fact-finder." *McCain*, 593 So. 2d at 504.

"A person who has been negligent, however, is not liable for the damages suffered by another when some separate force or action is 'the active and efficient intervening cause,' the 'sole proximate cause,' or an 'independent' cause." *Gibson v. Avis Rent-A-Car Sys., Inc.*, 386 So. 2d 520, 522 (Fla. 1980) (internal citations omitted). "[O]nly when an intervening cause is completely independent of, and not in any way set in motion by, the tortfeasor's negligence [does] the intervening cause relieve[] a tortfeasor from liability." *Deese v. McKinnonville Hunting Club, Inc.*, 874 So. 2d 1282, 1287–88 (Fla. 1st DCA 2004).

"If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact." *Gibson*, 386 So. 2d at 522. The foreseeability of an intervening cause turns on "whether the harm that occurred was within the scope of the danger attributable to the defendant's negligent conduct." *Id.*

In this case, whether the Serrano crash was within the scope of the danger caused by Dickinson's negligent conduct is answered by the following question: Is the subsequent accident the type of harm that may be expected from a stationary vehicle blocking lanes on an expressway or an interstate highway? *Id.* at 522–23. The answer, well-established by case law, is yes.

### *Gibson* and Later Cases

This case is controlled by the Florida Supreme Court's decision in *Gibson.*

In *Gibson*, the plaintiff sued Arata, McNealy, and Avis Rent-A-Car for damages resulting from a multiple car collision on an interstate highway. *Id.* at 521. Arata, who was intoxicated, stopped his Avis rental car in an inner lane for no apparent reason, causing a second car to stop behind him. *Id.* The driver of the second car got out and began directing traffic around the stationary cars. *Id.* The plaintiff stopped his car a few feet

from the second car but was immediately struck from behind by McNealy's vehicle, with the force of the impact propelling the plaintiff's car into the second car. *Id.* The district court affirmed a directed verdict in favor of Arata and Avis on the ground that McNealy's negligence was an efficient intervening cause of the plaintiff's damages. *Id.*

On review, the Florida Supreme Court quashed the district court's decision, holding that "Arata's stopping his car in the middle of an interstate highway is the type of negligence which 'in the field of human experience' may result in the type of harm that occurred here" because "a reasonable person would have to conclude that stopping a car in the middle of an interstate creates a risk that other cars may collide as a result of trying to avoid hitting the stopped vehicle." *Id.* at 523.

The court reasoned that "the question of whether to absolve a negligent actor of liability is more a question of responsibility" than of physical causation. *Id.* at 522. "If an intervening cause is foreseeable the original negligent actor may still be held liable. The question of whether an intervening cause is foreseeable is for the trier of fact." *Id.* Therefore, "[i]n such multiple car accidents the jury may find more than one driver responsible." *Id.* at 523.

*Gibson* involved the common situation where an inattentive driver crashes into a plaintiff who stopped to avoid hitting a stationary vehicle blocking a lane on an interstate highway. The Florida Supreme Court later distinguished the *Gibson* scenario from a "materially different factual situation" in *Department of Transportation v. Anglin,* 502 So. 2d 896, 897 (Fla. 1987), a case upon which Dickinson and Biomet heavily rely.

In *Anglin,* Mrs. Anglin and two family members were driving on a rural highway when their truck's engine died after crossing a railroad track and going through a deep puddle. *Id.* They first pushed the vehicle to the side of the road but later tried to restart it on the roadway. *Id.* About 15 minutes after the Anglin truck stalled out, a truck driven by DuBose passed them heading in the opposite direction, and someone in DuBose's vehicle yelled they would return to help. *Id.* DuBose then traveled a short distance, slammed on his brakes, spun around and headed back towards Anglin's vehicle. *Id.* "With the engine roaring and at a speed approaching forty miles per hour, DuBose failed to stop and slammed into the back of the [Anglins'] truck." *Id.*

The Anglins sued the railroad company and the Department of Transportation, "alleging negligence in the design of the railroad tracks and the roadway by allowing the accumulation of water on the roadway

6

immediately adjacent to the tracks." *Id.* at 898. The trial court granted summary judgment to the defendants, but the district court reversed. *Id.*

On review, the Florida Supreme Court held that "as a matter of law, the actions of DuBose constituted an independent, efficient, intervening cause of the Anglins' injuries." *Id.* The court reasoned:

> [E]ven assuming that petitioners had created a dangerous situation, ***the actions of DuBose were so far beyond the realm of foreseeability that, as a matter of law and policy, the petitioners cannot be held liable for the respondents' injuries***. While it may be arguable that petitioners, by creating a dangerous situation which caused the respondents to require assistance, could have reasonably foreseen that someone may attempt to provide such assistance, ***it was not reasonably foreseeable that DuBose would act in such a bizarre and reckless manner***. Petitioners' negligent conduct did not set in motion a chain of events resulting in injuries to respondents; it simply provided the occasion for DuBose's gross negligence.

*Id.* at 899–900 (emphasis added). *Anglin* is a case where a tortfeasor knew all about the stalled vehicle and inexplicably disregarded such knowledge by turning around and crashing into it.

In two cases involving a subsequent rear-end collision following an initial accident, other district courts of appeal found that the facts were more closely aligned with *Gibson* than *Anglin*.

In *Zwinge v. Hettinger*, 530 So. 2d 318, 321–23 (Fla. 2d DCA 1988), the Second District held that the evidence was sufficient to present a jury question as to whether the driver who allegedly caused the first automobile accident on I-275 created a situation of danger rendering the plaintiff's accident—which occurred three to ten minutes later when he was rear-ended as he was stopping to render aid—a foreseeable result of that peril.

In *Cooke v. Nationwide Mutual Fire Insurance Co.*, 14 So. 3d 1192, 1193, 1197 (Fla. 1st DCA 2009), the First District confronted a case arising from an accident on I-75. The court applied *Gibson,* holding that the negligence of the plaintiff's decedent in failing to brake when the vehicle in front of him slowed—an accident which occurred when the plaintiff's decedent "failed to heed, or perhaps to even notice, the warning flares set out by the deputy"—was not an intervening and superseding cause acting to break the chain of causation stemming from the defendant's negligence in a prior

7

accident that had occurred *over an hour earlier* and had slowed traffic on the interstate. *Id.* at 1193, 1197. The court concluded that a reasonable fact-finder could find that the chain of events, including the decedent's actions in the second accident, was foreseeable. *Id.* at 1197.

*Gibson*, *Zwinge*, and *Cooke* compel the conclusion that the foreseeability of Serrano's conduct from the standpoint of Dickinson's negligence was, at the very least, a jury question.

Dickinson and Biomet rely upon cases which are distinguishable because they involve different theories of negligent conduct and stem from accidents on streets and in locations that present different driving scenarios than a stopped car blocking a lane on an interstate highway. *See Seminole Lakes Homeowner's Ass'n, Inc. v. Esnard*, 263 So. 3d 56, 57–59 (Fla. 4th DCA 2018) (involving a homeowner association's failure to enforce a rule prohibiting street parking); *Las Olas Holding Co. v. Demella*, 228 So. 3d 97, 106 (Fla. 4th DCA 2017) (where claim of negligence involved a hotel's placement of a pool cabana that collapsed after an intoxicated driver drove into the cabana's wall); *Pope v. Cruise Boat Co.*, 380 So. 2d 1151, 1152–53 (Fla. 3d DCA 1980) (holding that defendant's conduct in allowing a boat on a trailer to be parked on the shoulder of the street was not the proximate cause of a pedestrian's injuries, where the pedestrian was walking along the shoulder rather than a sidewalk and was struck by a truck when trying to navigate around the boat).

### This Case

The trial court improperly granted summary judgment in favor of Dickinson and Biomet. Viewing the facts of this case in the light most favorable to the plaintiff, a reasonable jury could conclude that Dickinson's negligence proximately caused the plaintiff's injuries.

The trial court erred in finding as a matter of law that Serrano's negligent operation of his semi-truck was an intervening cause of the harm to the plaintiff, breaking the chain of causation and relieving Dickinson and Biomet from liability.

Serrano's negligent conduct was a foreseeable byproduct of Dickinson's negligence. On an expressway or interstate highway, with no stop lights or stop signs and the potential for highway hypnosis, a driver's inattention can arise from a multitude of causes, including using a cell phone, changing radio stations, falling asleep, or dealing with children fighting in the backseat. Because such inattention is a foreseeable cause of a collision with a stopped vehicle on an expressway, the law permits the

8

conclusion that Dickinson's conduct set in motion a chain of events resulting in injury to the plaintiff.

The test of foreseeability does not require one to foresee exactly how an accident will unfold. The law does not require an absurd degree of specificity. As our supreme court has explained, "it is immaterial that the defendant could not foresee the *precise* manner in which the injury occurred or its *exact* extent." *McCain,* 593 So. 2d at 503.

This case is materially indistinguishable from *Gibson*—Dickinson lost control of her Jeep and stopped in the middle of the Turnpike, the plaintiff came to a stop or near stop to avoid hitting the Jeep, and Serrano rear-ended Bruning's semi-truck that had stopped next to the plaintiff, injuring the plaintiff when his cargo fell on top of the plaintiff's vehicle. Unlike *Anglin* and similar cases, there was nothing extraordinary, freakish, or bizarre about this accident. It was a garden-variety highway accident.

We reverse the summary final judgment and remand to the circuit court for further proceedings.

*Reversed and remanded.*

CIKLIN, J., concurs.
KLINGENSMITH, C.J., concurs specially with opinion.

KLINGENSMITH, C.J., concurring specially.

I concur in the majority opinion but write to note that I question the viability of *Cooke* under the new summary judgment standard. A long time interval between an initial roadway accident and a subsequent mishap might well justify a judicial finding of the existence of an intervening cause.

\*     \*     \*

***Not final until disposition of timely filed motion for rehearing.***

9